Filed 4/19/13  In re Michael H. CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re MICHAEL H., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SCOTT H., <br><br> Defendant and Appellant. | F065926 <br> (Super. Ct. No. JD128268-00) <br><br> **O P I N I O N** |

### THE COURT*

APPEAL from an order of the Superior Court of Kern County.  Louie L. Vega, Judge.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Theresa A. Goldner, County Counsel, and Paul E. Blackhurst, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Wiseman, Acting P.J., Levy, J., and Poochigian, J.

Appellant, Scott H., is the father of 17-month-old Michael, the subject of this dependency appeal, who was detained and placed in foster care. After the dispositional hearing in April 2012, Michael's maternal grandmother filed a Welfare and Institutions Code section 388[1] petition asking the juvenile court to place Michael with her. The juvenile court denied the petition and subsequently terminated reunification services and set a section 366.26 hearing.

Scott appeals from the juvenile court's denial of the maternal grandmother's section 388 petition. We affirm. The juvenile court properly exercised its discretion in determining that Michael's best interest would not be served by a change of placement.

## PROCEDURAL AND FACTUAL SUMMARY

In February 2012, the Kern County Department of Human Services (department) took then three-month-old Michael into protective custody because Scott and Nichole, Michael's mother, were caring for him while under the influence of methamphetamine. At the time, Scott, Nichole, and Michael were living with Nichole's mother, Michelle, and Michelle's live-in boyfriend, Rex. Michelle and Rex are both drug addicts in recovery. The department placed Michael in foster care.

Nichole told the investigating social worker that she smoked methamphetamine on and off over the prior five years and that she relapsed after Michael was born. She said she did not use methamphetamine at Michelle's house because it was not allowed. However, she helped Michelle take care of Michael while she (Nichole) was under the influence of methamphetamine.

Scott told the social worker that he had been using methamphetamine periodically for approximately seven or eight years. In February 2011, he completed a drug diversion program but relapsed the following May. He said his relapses consisted of a one-time

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

use.  Following his relapse in May 2011, he smoked methamphetamine several more times but not in Michelle's house.

Michelle stated that Scott and Nichole had been living with her for approximately a month and a half before Michael was born.  She did not know that Scott and Nichole were using drugs until Nichole overdosed in her home in November 2011, six days after Michael's birth.  Nichole was transferred to the hospital where she remained for approximately three days.  During Nichole's hospitalization, Michelle was informed that the department would be notified.  She said she welcomed the department's involvement.  However, the department closed the case after a social worker visited Scott, Nichole, and Michael several times in Michelle's home.  Michelle told the social worker that she was concerned about Scott and Nichole's drug use and tried to persuade the department to provide them drug treatment and leave Michael in her care.

Michelle also stated that she enlisted the help of a friend who worked for the health department.  Her friend visited her home every two to three weeks from December 2011 to February 2012 to make sure Scott and Nichole were taking care of Michael while Michelle was working.  She also said that she called the child abuse hotline in January 2012 but did not get a response.  She called the hotline again several weeks later and again got no response.

The department filed a dependency petition on Michael's behalf alleging under section 300, subdivision (b) that Scott and Nichole's drug use placed him at a substantial risk of harm.  The juvenile court ordered Michael detained pursuant to the petition and, at an uncontested jurisdictional hearing, adjudged him a dependent of the court.  The court set the dispositional hearing for April 2012.

Michelle retained an attorney who filed a section 388 petition several days before the dispositional hearing asking the juvenile court to place Michael with Michelle.  At the time, the department was evaluating Michelle's home for placement.

3

In April 2012, the juvenile court conducted the dispositional hearing, ordered Michael removed from parental custody, and ordered six months of reunification services for Scott and Nichole. The juvenile court also ordered the department to arrange weekly supervised visitation for Scott and Nichole and ordered visitation for Michelle to occur concurrently with Nichole's. The juvenile court set a hearing on the section 388 petition in May 2012 and a six-month review hearing in October 2012.

The juvenile court continued the section 388 hearing and it was ultimately conducted in August 2012. Meanwhile, in June 2012, the department completed its inspection of Michelle's home for placement and approved her home. However, the department denied Michelle's request for placement because she failed to protect Michael from Scott and Nichole's drug use while Michael was living in her home.

In its report for the section 388 hearing, the department informed the juvenile court that Michael was placed with a foster family in March 2012 and was doing very well. Michael's foster parents wanted to adopt him.

In August 2012, the juvenile court conducted a contested hearing on Michelle's section 388 petition. Michelle testified about her efforts to protect Michael while he was in her home. Aside from contacting the department, she tried to minimize the time Michael was left alone with Scott and Nichole. She estimated that he was only with them three or four hours on a typical day. She said she considered forcing Scott and Nichole to leave her house but was afraid they would take Michael with them. She thought she could better protect Michael by allowing them to live with her. She also considered pursuing a legal guardianship but Scott and Nichole would not consent to it. In addition, Michelle did not have the resources to obtain legal assistance.

Michelle further testified that she regularly visited Michael after he was removed and that he displayed love and affection for her during their visits. She said she had the financial means to support Michael and would take care of him full time if he were placed in her care.

On cross-examination, Michelle testified about her own drug history. She said that, at one time, she used methamphetamine "quite a lot" but she had not used it in eight years. She suspected that Nichole was using drugs while pregnant with Michael because Nichole was agitated and slept all day and was up all night. However, she never saw Nichole and Scott use drugs or found drugs or drug paraphernalia in her home. She said her suspicions were confirmed after Nichole overdosed. She begged Nichole and Scott to get drug treatment and attend Narcotics Anonymous meetings, however, she could not bring herself to report their drug use to the police.

Michelle further testified on cross-examination that in February 2012, approximately a week before Michael was taken into protective custody, Michelle saw Nichole and Scott passed out on the bed with a methamphetamine pipe nearby. Michelle said she did not call the police and regretted it.

At the conclusion of the hearing, the juvenile court determined that a change in Michael's placement was not in his best interest and denied Michelle's section 388 petition. Michelle filed a notice of appeal (F065673) challenging the juvenile court's denial of her section 388 petition. The appeal was dismissed after she failed to file an opening brief. Scott subsequently filed a notice of appeal from which this case arises.

In October 2012, the juvenile court conducted the six-month review hearing.[2] Neither Nichole nor Scott personally appeared. Their whereabouts were unknown and they had not completed any of their reunification services, nor were they drug testing. The juvenile court terminated their reunification services and set a section 366.26 hearing

---

[2]     Scott requested through his attorney that this court take judicial notice of the department's social study report for the six-month review hearing filed in the juvenile court on October 4, 2012, and the minute order of that hearing. We grant his request. The report and the minute order are contained in the clerk's transcript and are relevant to our analysis.

in February 2013 to select a permanent plan. Neither Nichole nor Scott filed a writ petition challenging the setting order.

## DISCUSSION

Scott contends the juvenile court erred in denying Michelle's section 388 petition on two grounds: (1) as Michael's grandmother, Michelle was entitled to the relative placement preference pursuant to section 361.3; and (2) it was in Michael's best interest to be placed with Michelle. Thus, he further contends, section 388 compelled the juvenile court to issue an order placing Michael in Michelle's care.

We conclude Scott failed to preserve the issue of relative placement by not challenging the setting hearing by writ petition. We further conclude the juvenile court did not abuse its discretion in deciding, under section 388, that Michael's best interest would not be served by placing him with Michelle.

### *Section 388*

Under section 388, subdivision (a), a party may petition the juvenile court to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, there is a change of circumstances or new evidence, and the proposed modification is in the child's best interest. (§ 388, subd. (a); *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

We review the denial of a section 388 petition for abuse of discretion. (*In re Jasmon O*. (1994) 8 Cal.4th 398, 415.) Thus, we will not reverse unless the juvenile court's decision was "'"arbitrary, capricious, or patently absurd"'" (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318 (*Stephanie M*.)) and "'exceeded the bounds of reason'" (*id*. at pp. 318-319.)

In Michelle's section 388 petition, she identified the change of circumstances as a favorable evaluation of her home. As the record reflects, the department in fact approved her home for placement and there is no dispute that the approval constitutes a change of circumstances for purposes of section 388. Thus, the issue is whether the juvenile court

6

abused its discretion in determining that removal of Michael from his foster home and placing him with Michelle was not in his best interest.

In Michelle's section 388 petition, she asserted the relative placement preference under section 361.3 and the permanence and stability she could provide Michael as reasons why it would serve his best interests to be placed with her. In his appeal, Scott argues that Michelle was entitled to placement under section 361.3 once the department approved her home. As we now explain, Michelle was not entitled to relative placement preference and Scott forfeited the issue by not filing a writ petition. Nevertheless, the ultimate consideration under sections 361.3 and 388 is the same; i.e., the best interest of the child. Further, a party may seek to modify a placement order on a section 388 petition until such time as parental rights have been terminated. (*In re Ronald V.* (1993) 13 Cal.App.4th 1803, 1805.) Consequently, though we do not reach the issue of Michael's best interest under section 361.3, we review it in the context of Michelle's section 388 petition since Scott's parental rights are still intact.[3]

### *Relative Placement*

The relative placement preference is set out in section 361.3. It gives "preferential consideration" to a request by a relative of a child who has been removed from parental custody for placement of that child. "'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) However, contrary to Scott's assertion, the relative placement preference established by section 361.3 does not constitute "a relative placement *guarantee.*" (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798, original italics.) Nevertheless, it does "express[ ] a command that relatives be assessed and *considered*

---

[3]    We are informed that the section 366.26 hearing originally set for February 6, 2013, was continued until April 8, 2013. Even assuming the juvenile court terminated Scott's parental rights at the continued hearing, his parental rights are intact until the juvenile court's order is final.

favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interest of the child." (*Stephanie M*., *supra*, 7 Cal.4th at p. 320, original italics.)

The relative placement preference applies at the dispositional hearing and thereafter "whenever a new placement of the child must be made...." (§ 361.3, subd. (d).) However, relative placement no longer applies once the juvenile court terminates reunification services. (*In re Sarah S*. (1996) 43 Cal.App.4th 274, 285-286.)

In this case, Michelle raised the relative placement preference in her section 388 petition and Scott preserved it by challenging the juvenile court's denial of it by direct appeal. However, the juvenile court terminated Scott and Nichole's reunification services and set a section 366.26 hearing at the six-month review hearing in October 2012. The juvenile court's findings and orders issued at the setting hearing must be challenged by writ petition (Cal. Rules of Court, rules 8.450 and 8.452) or they are forfeited. Since Scott did not challenge the juvenile court's order terminating reunification services, he failed to preserve the relative placement issue. Thus, it no longer applies to Michelle and we are precluded from reviewing it as a factor in the juvenile court's best interest analysis.[4]

### *Best Interests*

The question before the juvenile court at the section 388 hearing was whether a change in placement was in Michael's best interest. In deciding that it was not, the juvenile court stated it did not believe Michelle did not know that Nichole and Scott were using methamphetamine while in her home given her own use of the drug and ability to recognize someone who was using. In addition, the juvenile court noted that Michael had

---

[4]    In his reply brief, Scott asked this court to strike that portion of respondent's brief addressing relative placement as not in conformance with California Rules of Court, rule 8.204(a)(1)(C) [citation to the record]. Since we are precluded from reviewing the issue, we deny his request as moot.

been in the same foster home for six months (March through August 2012), which it considered a long-term placement. Under the circumstances, the juvenile court determined that Michelle had not met her burden of proof under section 388 and that placing Michael with her would not serve his best interest.

We concur with the juvenile court's decision. Scott and Nichole were using methamphetamine while caring for Michael. Michelle knew it and failed to take appropriate measures to protect Michael. In addition, Nichole's methamphetamine use was sufficiently severe that she overdosed. Under the circumstances, Michael could have been seriously hurt while in her care. Further, the record does not support Scott's contention on appeal that Michael was bonded to Michelle. Even if that were true, it would not undermine the juvenile court's placement decision in this case.

We conclude the juvenile court did not abuse its discretion in denying Michelle's section 388 petition and affirm.

## DISPOSITION

The juvenile court's order issued on August 14, 2012, denying Michelle's section 388 petition, is affirmed.