Filed 12/11/14  In re K.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.D., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. R.D., et al, Defendants and Appellants. | E060836 (Super.Ct.No. RIJ1200630) OPINION |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant R.D. (father).

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant D.V. (grandmother).

1

Gregory P. Priamos, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

Appellant R.D. (father) is the father of K.D. (child), who was nearly two months old when the initial juvenile dependency petition was filed under Welfare and Institutions Code section 300.[1]  Father appeals from the juvenile court's orders of March 21, 2014, first denying the maternal grandmother's petition for modification under section 388, and then terminating father's parental rights to the child.  Appellant D.V. is the child's maternal grandmother (grandmother).  Grandmother also appeals from the order denying her section 388 petition and joins in father's opening brief.  As discussed below, we affirm the court's orders.

### FACTS AND PROCEDURE

*Detention*

In early June of 2012, father beat up the child's mother (mother) in the child's presence and while the child's eight-year-old half brother[2] was in the house.[3]  When

---

[1]  All section references are to the Welfare and Institutions Code unless otherwise indicated.

[2]  The child's half brother is not a subject of this appeal.  He was placed with his paternal grandparents.

[3]  The exact chain of events in June 2012 is not perfectly clear from the detention report dated June 22, 2012.  The parents apparently argued on a regular basis in the presence of the child and his brother, and this often turned violent.  Mother and the child changed residences on at least two occasions in May and June, including once to a domestic violence shelter that she left without notice.  Mother at one point allowed father to move back in with her and the child.

Father repeated this action the following day, mother asked the brother to call police. This took place during a fight between the parents that included them arguing over the child and exchanging him back and forth between them. Police arrested father for domestic violence and found him to be under the influence of methamphetamine. Father was sentenced to summary probation and a restraining order was issued. On June 13, 2012, mother left a voicemail for the social worker about the incident, stating she could not protect the child from father when he is released from jail and that the social worker should "come and get" the child.

Father and mother had a child welfare history together, recently generating referrals in January, March, and April (twice) of 2012 for domestic violence while mother was pregnant with the child and in the presence of the brother.

On June 19, 2012, the parents' social worker from the previous referrals interviewed mother at the CPS office. Mother stated she did not think she could protect the child from father, and gave conflicting statements about whether she wanted to keep the child or voluntarily relinquish him for adoption. Both children were placed into protective custody.

On June 21, 2012, the Department of Public Social Services (DPSS) filed a section 300 petition, alleging as to the child and his brother that the parents had failed to protect them as defined in section 300, subdivision (b). Specifically, the petition alleged: the parents engage in domestic violence in front of the children and failed to participate in pre-placement services; father has an extensive history of abusing methamphetamine; and

3

mother allows father to provide care for the children while under the influence of methamphetamine.

At the detention hearing held on June 22, 2012, the court found a prima facie case for detaining the children.

An amended petition was filed on July 20, 2012, to delete allegations regarding the father of the child's brother.

*Jurisdiction and Disposition*

At the jurisdiction hearing held on August 27, 2012, the court found the allegations to be true and declared the child and his brother to be dependent children. The court removed the child from father's care and ordered DPSS to provide father with reunification services and monitored visits.

*Section 387 Supplemental Petition, Detention and Jurisdiction*

On November 16, 2012, DPSS placed the child and his brother with mother after successful overnight and weekend visits and a Team Decision Meeting. On November 19, 2012, during the social worker's home visit, mother said she did not feel bonded to the child and did not think she could care for him. Mother stated she had the child only because father wanted a child, and that father had primarily cared for the child before the detention in June. Mother asked that the child be placed with the previous foster parents. Mother asked to keep the child's brother because she was attached to him. The child was removed from mother and placed with the previous foster parents that same day. The foster parents were glad to have the child and expressed interest in adopting him. The social worker informed them that relatives would need to be considered first for adoption

4

Also on November 19, 2012, the social worker asked mother about relatives to consider for placement and mother suggested her mother, grandmother, who lives in Missouri.

On November 21, 2012, DPSS filed a supplemental juvenile dependency petition under section 387 indicating the previous disposition had not been effective because mother had asked that the child be removed from her care. In the detention report filed with the petition, DPSS asked the juvenile court to order an Interstate Compact on the Placement of Children (ICPC) agreement for grandmother, and on November 26, at the detention hearing, the court did so.

At that time father was in a one-year residential drug program and was to have a supervised visit with the child once each week. Father was referred to the program by the probation department after he served his jail time for the June domestic violence incident. Father stated that he was interested in reunifying with the child and declined to participate in adoption planning.

In December of 2012, mother told the social worker that she was happy the child was with the foster parents and noted that the child was "really attached" to them. Mom was unsure if she wanted the child returned to her care, and wanted the child placed with father or with family in Missouri. Mother at that time refused to visit with the child.

On January 2, 2013, the juvenile court again took jurisdiction over the children and ordered reunification services for mother.

*Six-Month Status Review*

On January 28, 2013, the social worker made a referral to the ICPC unit to investigate grandmother for placement. Mother expressed misgivings about placing the

5

child out of state, but agreed that the ICPC should proceed. On February 20, 2013, during a discussion about possible adoption, mother told the social worker that she wanted the child placed with grandmother in Missouri.

On January 11, 2013, father was terminated from the substance abuse program when he returned late from juvenile court. Also in January, father had a warrant out for his arrest for a carjacking in which mother was the victim. As of February 2013, father had not participated at all in his case plan and had not contacted the social worker after leaving the substance abuse program. When the child's brother was removed from mother for the final time in March 2013, he told the social worker that he was "terrified" of father. Father had been spending time at mother's residence, despite the existence of the restraining order.

On March 4, 2013, father was arrested and held for burglary. Father would remain in custody for the rest of these proceedings.

At the six-month status review hearing held on May 2, 2013, the court terminated father's reunification services because he did not participate regularly or make substantive progress in the reunification plan.

*Twelve-Month Status Review*

On May 28, 2013, the social worker made an updated referral to the ICPC unit regarding grandmother in Missouri. At about that time mother expressed misgivings about placing the child out of state and said she did not want him placed with grandmother. The social worker expressed concern about placing the child out of state because he was visiting weekly with his brother, the two had bonded, and the brother

6

made clear that he did not want to move to Missouri. On June 7, 2013, mother stated she still had mixed feelings about reunifying with the child, and visited him only every four to six weeks instead of the weekly visits that she was allowed. However, on July 16, 2013, mother declined to participate in adoption planning, stating "I don't want to." Father also declined to participate in adoption planning, stating that he wanted to get his son back, but if not he would like the child to be placed with mother's family.

On July 31, 2013, the juvenile court terminated mother's reunification services and set a section 366.26 selection and implementation hearing for December 5, 2013.

*Section 366.26 Hearing and Grandmother's Section 388 Petition*

In the report prepared for the section 366.26 hearing, the social worker reported that on August 26, 2013, DPSS sent "an outgoing [ICPC] packet" to Missouri regarding grandmother, which Missouri accepted on September 23, 2013. The home study was to be completed by November 27, 2013. DPSS recommended the child be adopted by his foster parents and that the hearing be postponed for 90 days to allow for an adoption assessment. The social worker reported that the child and his brother saw each other once or twice each week, at the child's foster home, at church, and at the park, and were quite bonded to each other. The brother became very upset when mother told him the child might move to Missouri.

The section 366.26 hearing set for December 5, 2013, was continued to March 5, 2014.

The ICPC with grandmother was approved on December 9, 2013. However, DPSS recommended the child be adopted by the foster parents, citing his close attachment to the foster parents and his continuing bond with his brother.

On December 25, 2013, mother died suddenly of an unspecified illness.

On March 10, 2014, grandmother filed a petition under section 388 to modify the juvenile court's order, asking that the child be placed with her and her husband because they had been approved for placement through the ICPC.

On March 21, 2014, the juvenile court held a hearing on the section 388 petition, with grandmother present by telephone, and the contested section 366.26 hearing, with father present in custody. The court concluded that, although circumstances had changed, in that grandmother had been approved for placement through the ICPC, it would not be in the child's best interest to take him from his caregivers of nearly two years, and from the more-than-weekly contact with his brother, and place him with the grandmother whom he had only met twice. The court then held the section 366.26 hearing. After hearing argument from both sides, the court found that none of the exceptions to the preference for adoption existed, and so terminated father's parental rights and set adoption by the foster parents as the child's permanent plan.

This appeal followed.

## DISCUSSION

1. *Grandmother's Section 388 Petition*

Both grandmother and father challenge the juvenile court's order denying grandmother's section 388 petition for modification to allow the child to be placed with

8

her in Missouri. DPSS argues father has no standing to appeal this order. Because we ultimately decide the court properly denied grandmother's petition, we decline to address the standing issue.

"Section 388 allows a person having an interest in a dependent child of the court to petition the court for a hearing to change, modify, or set aside any previous order on the grounds of change of circumstance or new evidence." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) "'[S]pecific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required. [Citation.]" (*Ibid.*) "[T]he change of circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged prior order." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485.)

"In any case in which a child is removed from the physical custody of his or her parents . . . preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . ." (§ 361.3, subd. (a).) "'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) The relatives entitled to preferential consideration for placement include an adult who is a grandparent or aunt. (§ 361.3, subd. (c)(2).) The preferential consideration continues at least throughout the reunification period. (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 795.)

The relative preference for placement is again at issue when a new placement is necessary. Section 361.3, subdivision (d), provides, in relevant part: "Subsequent to the hearing conducted pursuant to Section 358 [the dispositional hearing], whenever a new

9

placement of the child must be made, consideration for placement shall again be given as described in this section to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements."

In determining whether relative placement is appropriate, the juvenile court and the Department are to consider, among other factors, as follows: "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs. [¶] (2) The wishes of the parent, the relative, and child, if appropriate. [¶] . . . [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful. [¶] (7) The ability of the relative to do the following: [¶] . . . [¶] (E) Facilitate court-ordered reunification efforts with the parents." (§ 361.3, subd. (a).)

However, "[a]fter the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interest of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

"The relative placement preference . . . is not a relative placement *guarantee* . . . ." (*In re Joseph T., supra,* 163 Cal.App.4th at p. 798.)

10

We review the juvenile court's denial of a section 388 petition for abuse of discretion. (*In re Anthony W., supra*, 87 Cal.App.4th at p. 250; see also *In re Marcos G.* (2010) 182 Cal.App.4th 369, 382.)

Here, grandmother argues the juvenile court abused its discretion when it denied the petition because it failed to apply the relative placement preference and DPSS's delay in processing the ICPC prejudiced her request for placement of the child. In her petition, grandmother cited the approval of the ICPC as the changed circumstances, asked the court to place the child with her in Missouri, and explained that the change would be in the child's best interest because grandmother was his blood relative, his mother had died unexpectedly, and there were many family members in Missouri, including a half brother and half sister, that he should have a chance to be with.

We cannot say that the juvenile court abused its discretion. Despite the change in circumstances as described in grandmother's petition, placing the child with the grandmother in Missouri would not be in the child's best interest. First, the child had been with the foster family since he was eight weeks old, and at the time of the hearing he was nearly two years old. The foster family was the only family the child knew, and the record shows he was bonded to the foster parents. Second, the record shows the child had visited with grandmother only twice—once when he was 10 weeks old and again when grandmother visited for mother's memorial service. Regarding the half siblings mentioned in grandmother's petition, neither the child, nor even grandmother, had ever met them. Third, moving the child to Missouri would interfere with the close bond he

11

shared with his older half brother, which was established and maintained by visits taking place once or twice weekly.

Regarding grandmother's specific arguments on appeal, the juvenile court did not err by not applying the relative placement preference, because this preference does not exist after reunification efforts have failed. (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.) Mother's reunification services were terminated at the 12-month review hearing on July 31, 2013, a full seven months prior to grandmother's petition, and father's services were terminated even earlier, at the six-month hearing on May 2, 2013. Grandmother also argues the delay in completing the ICPC prejudiced her in seeking placement of the child because it allowed the child to become bonded with the foster parents. However, grandmother fails to recognize that placing the child with her in Missouri would have interfered with mother's own efforts to reunify with the child. Further, mother often changed her mind about whether she wanted the child placed with grandmother or to stay in local placement with the foster family. As stated above, the wishes of the parents and the relative's ability to facilitate reunification efforts with the parents are relevant in determining whether placement with a relative is in the child's best interest. (§ 361.3, subd. (a)). In addition, DPSS initially requested an ICPC for grandmother in November 2012, right after the child was re-detained at mother's request. DPSS referred the case to the ICPC unit on January 28, 2013 and made an updated referral on May 28, 2013, after which mother again changed her mind and stated she did not want the child placed with grandmother. On August 26, 2013, within weeks after the end of the reunification period, DPSS sent an outgoing ICPC packet to Missouri to have grandmother assessed for

12

placement. However, by that time, DPSS noted, the child had become bonded with both the foster parents and his older half brother.

We sympathize with grandmother that placement of the child with her in Missouri took a back seat to mother's ultimately unsuccessful efforts to reunify with the child. We also realize that this delay resulted in the child having time to become bonded with both the foster parents and his older half brother. However, we emphasize that the paramount consideration at the time of the challenged decision was the best interest of the child, and we cannot say that the juvenile court abused its discretion when it determined that removing the child from the only family he knew to place him with the grandmother he had met only twice was not in the child's best interest. For this reason we affirm the order denying grandmother's section 388 petition.

2. *Termination of Father's Parental Rights*

Father briefly asserts the juvenile court erred when it terminated father's parental rights at the section 366.26 hearing.

"Adoption is the Legislature's preferred permanent plan." (*In re D.M.* (2012) 205 Cal.App.4th 283, 290.) Thus, as a general rule, at a section 366.26 hearing, if the juvenile court finds that the child is adoptable, it must terminate parental rights. (§ 366.26, subds. (b)(1) & (c)(1).) There is an exception to this rule, however, if "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" (§ 366.26, subd. (c)(1)(B)) for one of six specified statutory reasons. (*Id.*, subd. (c)(1)(B)(i)-(vi).)

13

Father does not argue the child is not adoptable.  Neither does he specifically argue that one of the specified exceptions to the preference for adoption applies.  He merely asserts the court should have chosen adoption as the permanent plan because he had a bond with the child and his lack of visits with the child was caused by "external obstacles."  Father has not carried his burden as appellant to establish error by the juvenile court.  "The juvenile court's judgment is presumed to be correct, and it is appellant's burden to affirmatively show error."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  Father has not done so.  For this reason we affirm the court's order terminating his parental rights.

**DISPOSITION**

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

HOLLENHORST
J.

KING
J.