[No. B198610. Second Dist., Div. One. June 3, 2008.]

In re JOSEPH T., JR., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
JOSEPH T., SR., Defendant and Appellant.

**COUNSEL**

Jennifer Mack, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Liana Serobian, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**ROTHSCHILD, J.**—Joseph T., Sr. (Father), appeals from the order at the six-month review hearing denying placement of his son, Joseph T., Jr. (Joseph), with his paternal aunt.

The principal issue in this case is whether, without qualification, the relative placement preference under subdivision (a) of Welfare and Institutions Code section 361.3,[1] applies after the dispositional hearing through the family reunification period or whether subdivision (d) of that statute precludes application of the preference after the dispositional hearing unless "a new placement . . . must be made." We hold that the relative placement preference

---

[1] All statutory references are to the Welfare and Institutions Code.

applies at least through the family reunification period and that subdivision (d) of section 361.3 expands, rather than contracts, the application of the preference. Under the circumstances of this case, however, the dependency court's failure to apply the preference at the six-month review hearing and the court's failure to state on the record its reasons for not placing the child with his aunt were harmless errors.

## FACTS AND PROCEEDINGS BELOW

In June 2006, Joseph and his four-month-old half sibling, Shane H., were detained and placed together in foster care because Monica M. (Mother) had an unresolved drug problem and failed to comply with the terms of a March 2006 voluntary family maintenance contract with Los Angeles County Department of Children and Family Services (DCFS) in which she agreed, among other things, that her children were to have no contact with Jesse H., Shane's father. Jesse H. has a history of domestic violence with Mother and on one occasion of domestic violence Joseph received a cut near his eye when he was pushed against a stove. A restraining order prohibited physical contact between Jesse H. and Mother.

Father, who has a criminal record and a long history of heroin use, was paroled from prison in April 2006 and lived with Mother until June 2006. At the detention hearing on June 19, the dependency court ordered DCFS to assess the relatives who requested placement of the children—the maternal grandparents and Shane's paternal grandmother. According to a July 10 report, DCFS considered Shane's paternal grandparents and the maternal grandparents for relative placements, but for various reasons DCFS determined that these relatives were not able to provide care for the children at that time. The parents had two monitored visits each week, and the visits were going well.

In late June, Father obtained a residence separate from Mother. In early July, Mother entered a residential drug treatment program. On July 10, the dependency court ordered DCFS to evaluate Father's home for placement of Joseph and continued the matter. In its July 19 report, DCFS recommended that Joseph be released to Father, noting that Father was complying with the conditions of his parole and was testing negative for drugs. On July 19, the dependency court ordered Joseph placed in Father's home.

On July 25, the court sustained DCFS's petition as amended, declaring the children dependents of the court pursuant to section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect), based on the domestic violence between Mother and Jesse H., the parents' histories of substance abuse, Father's drug-related criminal activity, and Mother's failure to comply

with her voluntary family maintenance agreement. Shane was placed in foster care and Joseph was placed with Father, who was afforded family maintenance services. Father also was ordered to participate in "NA/AA meetings" twice a week and to comply with his parole conditions. Mother was afforded monitored visits.

On August 16, DCFS detained Joseph from Father and placed him in his previous foster care home with Shane, based on Father's use of heroin and his violent physical altercation with Mother in Joseph's presence on August 15. On August 21, DCFS filed an amended petition containing the foregoing allegations. Father admitted to DCFS that he had relapsed into heroin use. On September 13, the dependency court sustained the August 21 petition, finding that Joseph was a dependent of the court pursuant to section 300, subdivisions (a) and (b). Father was afforded monitored visitation and reunification services. He was ordered to attend a drug rehabilitation program with random testing, attend parent education, and comply with his parole conditions.

According to a January 23, 2007 status review report, DCFS learned on January 16 that Father was then in state prison. On January 16, Father's sister, Deborah D., told the social worker that Father had been at her home and she had known that he had an outstanding arrest warrant, so she called the sheriff's department and Father was arrested in December 2006. Deborah D. and Father's parole officer also told DCFS that Father had been using drugs until his arrest. Father had not participated in any court-ordered drug treatment programs and had last visited Joseph in September 2006. Mother was not in compliance with her court-ordered classes and her drug testing was sporadic. Joseph was doing well in his foster home and showed no signs of stress or discomfort after being separated from Mother. DCFS recommended termination of family reunification services and selection of a permanent plan of adoption.

On January 23, the dependency court continued the six-month review hearing (§ 366.21, subd. (e)) to March 21, 2007. The court ordered DCFS to prepare a supplemental report as to whether any of Mother's relatives would be appropriate for placement. According to a March 21 interim review report, Mother suggested family friends, the B.'s, for placement. DCFS interviewed and rejected them because Mrs. B. was not forthcoming about Mr. B.'s criminal history. DCFS also reported that Joseph and Shane had bonded with their foster parents, whom they regarded as their "mother and father figure[s]."

At the March 21 hearing, the court continued the six-month review hearing to April 25 for a contested hearing. Upon the request of Father's counsel, the court also ordered DCFS to prepare a supplemental report on placement of Joseph with his paternal aunt, Deborah D.

According to an April 25 interim review report, a DCFS social worker spoke with Deborah D. on April 9. Deborah D. stated that upon Father's release from prison, he would be living with her. DCFS rejected placement of Joseph with Deborah D. "due to [Father's] possibly residing in the home and that the siblings would be separated. Joseph . . . and Shane . . . have a close bond with each other and [it] would cause a hardship if either one of them are separated. The Department has not received Live Scan information from Deborah's significant other. The Department has no information on the other person that resides in the home."

At the hearing on April 25, Father's counsel stated that Deborah D. lived in Kern County in a "closed community which is gated and private and very secure. It is entirely appropriate for children. They have a licensed day care facility on the premises. [¶] No one has come to [Deborah D.'s] home to check her out. She has livescanned. She is a registered nurse. She is a mandated reporter. She indicated a willingness over a course of time to have the child reside in her home. [Father] has a different address to move to immediately. I am, again, requesting that [DCFS] go out and inspect this home for appropriateness. [¶] These children do not have to be considered a sibling unit. The fathers do not get along and have not gotten along. I don't see any reason that these children must be placed together. They were not placed together at the beginning. When we have an appropriate relative, she should be at least investigated thoroughly."

DCFS admitted that the paternal aunt passed Live Scan[2] but DCFS had not received the Live Scan information for her significant other or other persons who lived in the home. Father's counsel responded that no one else lived in the paternal aunt's home.

Counsel for the children argued, "The children are the most stable person in each other's lives. I think they should be considered a sibling unit. Moving one of them out of town, I don't know if that is facilitating reunification." Counsel for DCFS also stated that DCFS did not want to break up the sibling group at that time.

Without objection, DCFS's reports of January, March, and April 2007 were admitted into evidence. The court continued family reunification services for the parents but conditioned Mother's services on her relocating to a different "sober living" home. The court also informed the parents that if the children could not be returned home by October 24, the date of the 12-month hearing,

---

[2] Live Scan is an electronic fingerprinting system that quickly checks an individual's criminal history. (Health & Saf. Code, § 1522.04; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2005) 126 Cal.App.4th 144, 149, fn. 2 [24 Cal.Rptr.3d 256].)

reunification services may be terminated and the matter referred for selection of a permanent plan. At the end of the hearing, DCFS stated that it was in the process of assessing the home of Mother's family friends, the B.'s, as a possible placement and that it would have to get a criminal waiver for Mr. B. Father's counsel objected to placement with a stranger over the paternal aunt. The court noted the objection for the record.

Father filed a timely notice of appeal from the April 25 order, challenging DCFS's refusal to make a home visit or to consider placement with the paternal aunt.

## DISCUSSION

Father contends that the failure by both DCFS and the court to evaluate the paternal aunt for relative placement was prejudicial error under the relative placement preference of section 361.3, subdivision (a). In response DCFS argues that section 361.3 did not require DCFS or the dependency court to evaluate the paternal aunt on April 25, 2007, because under subdivision (d) of the statute, the relative placement preference applies at the time of the disposition hearing and thereafter only if "a new placement of the child must be made." The parties agree that within the meaning of section 361.3 no new placement needed to be made for Joseph at the six-month review hearing, so we express no view on that issue.

We reject DCFS's contention that the 1993 enactment of subdivision (d) of section 361.3 eliminated the relative placement preference after the dispositional hearing in circumstances other than when "a new placement of the child must be made." As we explain below, neither the language of the 1993 amendment nor its legislative history supports DCFS's reading of section 361.3, subdivision (d). Moreover, DCFS's interpretation is contrary to the strong California policy in favor of relative placement. Nevertheless, we affirm the dependency court's order because any errors relating to the application of the preference were harmless.

## I. *THE RELATIVE PLACEMENT PREFERENCE.*

Section 361.3, subdivision (a) states in relevant part: "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) Subdivision (a) further states that when a child is removed from his parents' physical custody "[t]he court shall order the parent to disclose to the county

social worker the names, residences, and any other known identifying information of any maternal or paternal relatives of the child" and that the county social worker "shall initially contact the relatives given preferential consideration for placement to determine if they desire the child to be placed with them." Those relatives desiring placement "shall be assessed according to the factors enumerated in [subdivision (a)]" and "[t]he county social worker shall document these efforts in the social study prepared pursuant to Section 358.1." The relatives entitled to preferential consideration for placement are "an adult who is a grandparent, aunt, uncle, or sibling." (§ 361.3, subd. (c)(2).)

Despite the mandate of section 361.3, subdivision (a), DCFS contends that the addition of subdivision (d) to section 361.3 (Stats. 1993, ch. 892, § 2.5, p. 4847) eliminated the relative placement preference once the dispositional phase is completed except when the court is required to change the child's placement. We disagree. Nothing in section 361.3, subdivision (d), states or implies such a result, the Legislature's intent as manifested in the legislative history of subdivision (d) is contrary to DCFS's reading of subdivision (d), and DCFS's interpretation of the statute would thwart the strong California policy in favor of relative placement as manifested in section 361.3, subdivision (a), and implemented in numerous California appellate decisions.

A. *The Meaning of Section 361.3, subdivision (d).*

Section 361.3, subdivision (d), states in relevant part: "Subsequent to the hearing conducted pursuant to Section 358 [the dispositional hearing], whenever a *new placement* of the child must be made, consideration for placement *shall again be given as described in this section* to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements." (Italics added.)

The plain language of subdivision (d) states that when a "new placement" is required the procedures "described in this section" must be followed in the same way as when there is an initial placement, including the affirmative duty of the court, under subdivision (a) of section 361.3, to order the parents to disclose the names and pertinent family information of relatives and the obligation of the social worker to follow through on that information, contact all the relatives whose names have been provided, and evaluate those relatives desiring placement. (§ 361.3, subd. (a).) In contrast, at least through the reunification period, when a relative voluntarily comes forward at a time when a new placement is *not* required, the relative is entitled to the preference and the court and the social worker are obligated to evaluate that relative (but the court need not again order the parents to disclose other possible relative placements).

■ Reading subdivision (d) as limiting rather than expanding or clarifying the situations in which the relative placement preference applies changes the meaning of the statute from an affirmative requirement of relative placement preference in cases of new placements to a prohibition against the relative placement preference in other situations. Nothing in the language of subdivision (d) eliminates the relative placement preference when a qualified relative comes forward after the initial placement and during the family reunification period and seeks placement of the child. Nor does subdivision (d) prevent a child welfare department from continuing to search for an appropriate relative placement after the child initially has been placed with a nonrelative.

■ Appellate court decisions have consistently held that the relative placement preference applies at least through the family reunification period. (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 285 [50 Cal.Rptr.2d 503]; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1064 [24 Cal.Rptr.2d 654]; *In re Jessica Z.* (1990) 225 Cal.App.3d 1089, 1098–1099 [275 Cal.Rptr. 323]; *In re Baby Girl D.* (1989) 208 Cal.App.3d 1489, 1493–1494 [257 Cal.Rptr. 1].) During the reunification period, the preference applies regardless of whether a new placement is required or is otherwise being considered by the dependency court. (*In re Jessica Z., supra,* 225 Cal.App.3d at p. 1099 [the dependency court should have applied the relative placement preference at the six-month review hearing, at which no new placement was required or, in the absence of the relative's request, would otherwise have been under consideration].) This was the law at the time subdivision (d) was enacted and there is nothing in the plain language of the subdivision to change that law.

## B. *The Legislative History.*

In 1993, the Legislature added subdivision (d) to section 361.3 in a package of amendments[3] designed in part to "strengthen[] the preferential consideration for placement given to relatives of a dependent child who has been removed from his or her home" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 426 (1993–1994 Reg. Sess.), as amended July 15, 1993, p. 1) and in part to " 'clarify current law regarding the preference for placement of dependent children with relatives.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 426 (1993–1994 Reg. Sess.), as amended April 20, 1993, p. 5, quoting from a letter in support of Sen. Bill No. 426 from the Cal. State Assn. of Counties.)

Because the Legislature is presumed to be aware of existing judicial interpretations when it amends a statute (*Estate of McDill* (1975) 14 Cal.3d

---

[3] The amendments were contained in two bills, Senate Bill No. 270 (1993–1994 Reg. Sess.) and Senate Bill No. 426 (1993–1994 Reg. Sess.), which were combined and enacted as Statutes 1993, chapter 892, page 4846.

831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]), if the Legislature intended to overrule the existing judicial interpretation of section 361.3—that the relative placement preference applies throughout the family reunification period regardless of whether a new placement is necessary or is otherwise under consideration—it would have done so explicitly. It did not do so, however, and nothing in the legislative history of the 1993 amendments contains evidence of any such intent. On the contrary, the legislative history shows that the Legislature intended to strengthen the relative placement preference, not to weaken it.

The legislation made a number of changes to the relative placement preference. For our purposes, the most significant change was an amendment to section 361.3, subdivision (a) which provided: "The county social worker shall further investigate the existence of other relatives for possible placement and document these efforts in the social study prepared pursuant to Section 358.1." (Sen. Bill No. 426 (1993–1994 Reg. Sess.), Stats. 1993, ch. 892, § 2.5, p. 4847.) This requirement, read together with the addition of subdivision (d) affirmatively required the social worker, whenever a new placement needed to be considered, not only to investigate the relative placement leads provided by the parents but also independently to "investigate whether there are relatives with which [*sic*] a child could be placed." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 426 (1993–1994 Reg. Sess.) as amended Apr. 20, 1993, p. 2.)[4] In addition, the legislation provided "that relatives are given preference any time a child is moved" and that relatives receive "placement preference whenever removal of the child from the current care provider would not be 'seriously detrimental to the emotional well-being of the child.' " (*Ibid.*)

The Legislature's intent to facilitate relative placement is further shown by a report on Senate Bill No. 270 by the Assembly Committee on the Judiciary. That report referenced a statement by the Juvenile Court Judges of California which supported the legislation because it "would help ensure that the greatest feasible effort is made to place dependent children with relatives." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 270 (1993–1994 Reg. Sess.) as amended June 14, 1993, p. 2.) The report also cited a 1992 study of California's foster care system by the Little Hoover Commission. According to that study, "one way to limit the negative impact of the foster care system on children is to place children with relatives." (*Id.* at p. 3.) The Assembly report concluded that "[a]side from serving the best interests of the dependent

---

[4] This requirement was enacted in the 1993 amendments to section 361.3 but no longer appears in the statute. Nevertheless, by adding this requirement to subdivision (a) and enacting subdivision (d), the Legislature made sure that when a "new placement" had to be considered the child welfare department would again have the affirmative duty independently to seek out relatives who would qualify for the relative placement preference.

child, it is estimated that appropriate placement with relatives could provide a 30% decrease in foster care placements resulting in an estimated $450 million dollar savings to the state." (*Ibid.*)

Against that background—the pre-1993 case law holding that the family placement preference applies throughout the reunification period regardless of whether a new placement is necessary or is otherwise under consideration, and the 1993 amendments leaving that case law untouched—we held in 1996 that the preference applies throughout the reunification period. (*In re Sarah S., supra,* 43 Cal.App.4th at p. 285.)

### C. *The Public Policy Favoring Relative Placement.*

■ The DCFS reading of the 1993 amendment—that the relative placement preference applies only at the dispositional hearing and whenever "a new placement is required" thereafter—drastically curtails application of the preference and is therefore antithetical to the Legislature's intent to " 'ensure that the greatest feasible effort is made to place dependent children with relatives.' " (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 270, *supra,* at p. 2.) The dispositional hearing often occurs within a month of the detention hearing. Thus, accepting DCFS's interpretation would, as a practical matter, frequently result in denying the relative placement preference to qualified relatives before they even learn of the child's need for placement. The court in *In re Jessica Z.,* rejecting the child welfare agency's argument to the contrary, held that the relative placement preference applied after the dispositional hearing. The court explained: "[I]t would be harsh indeed for this court to state unequivocally that when a relative expresses a willingness to accept responsibility for a child whose parents cannot care for him or her, that the request can safely be ignored if it is not made prior to the dispositional hearing. We can envision many scenarios under which a relative steps forward early in the dependency process, but after the dispositional hearing and its concomitant out-of-home placement order. When, as here, however, a relative requests custody while reunification efforts are still ongoing, and before any substantial damage would be done to the child by a change in placement, we conclude section 361.3 mandates that the propriety of such a placement at least be assessed." (*In re Jessica Z., supra,* 225 Cal.App.3d at p. 1099.)

Application of the preference throughout the reunification period is likewise supported by California's strong public policy favoring the facilitation of family reunification, because relative caregivers are more likely to favor the goal of reunification and less likely than nonrelative caregivers to compete with the parents for permanent placement of the child. As the court

stated in *In re Baby Girl D., supra,* 208 Cal.App.3d at page 1493, "[t]he object of dispositional hearings is to find a temporary caretaker who will meet the child's physical and psychological needs while cooperating in reunification efforts. A relative, who presumably has a broader interest in family unity, is more likely than a stranger to be supportive of the parent-child relationship and less likely to develop a conflicting emotional bond with the child."

We conclude, therefore, that the court should have considered Joseph's aunt under the relative placement preference. We reject DCFS's position that the relative placement preference did not apply in this case and its reading of section 361.3, subdivision (d), as limiting the preference to new placements once the dispositional hearing is completed.

## II. HARMLESS ERROR.

The relative placement preference, however, is not a relative placement *guarantee* (§ 361.3, subd. (a); *In re Sarah S., supra,* 43 Cal.App.4th at p. 282), and the record contains ample evidence that the preference was overridden in this case. Thus, under the circumstances of this case, the court's failure to afford the relative placement preference to Joseph's aunt and the failure of the court to state on the record its reasons for denying her placement request were harmless errors.

The record shows compelling reasons not to place Joseph with his aunt regardless of her qualifications. During the reunification period the first priority is family reunification. In this case the best chance of reunification was with Joseph's mother rather than with his father. Placing Joseph with his aunt in Kern County would have frustrated that goal by separating Joseph from his mother who lived in Los Angeles County and would have resulted in the placement of Joseph and his half brother in different homes.

Consideration of Father's contention that the court failed to make the findings required by section 361.3, subdivision (e), is necessary. That section provides, "If the court does not place the child with a relative who has been considered for placement pursuant to this section, the court shall state for the record the reasons placement with that relative was denied." The court here made no such statement. Because the reasons for denying placement are clear from the evidence and discussion at the hearing and support the court's decision, the court's failure to make findings is harmless. It is not reasonably probable such findings, if made, would have been in favor of appellant. (Cf. *In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1137 [98 Cal.Rptr.2d 715] [failure to state the facts on which the decision to remove the child from the parents is based (§ 361, subd. (d))].)

## DISPOSITION

The order is affirmed.

Vogel, J., concurred.

**MALLANO, Acting P. J.**, Concurring and Dissenting.—I concur in the disposition affirming the juvenile court's order. But in my view, the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court did not err in not applying the relative preference provisions of Welfare and Institutions Code section 361.3[1] nine months after the disposition hearing (and when three-year-old Joseph was in a stable placement in a foster home) because section 361.3 did not require DCFS or the juvenile court to give preferential consideration to the paternal aunt at a time when no new placement for Joseph needed to be made. (§ 361.3, subd. (d).)

Subdivision (a) of section 361.3 provides in pertinent part that "[i]n any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." Because the rules of statutory construction require that all subdivisions of a statute be given effect and harmonized if possible (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 46 [100 Cal.Rptr.2d 627]), subdivision (a) must be read together with subdivision (d). Subdivision (d) provides in pertinent part that "[s]ubsequent to the hearing conducted pursuant to Section 358 [(disposition hearing)], whenever a new placement of the child must be made, consideration for placement shall again be given as described in this section to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements." Thus, subdivision (d) "specifically provides for the application of the relative placement preference if a child must be moved after disposition" to suitable relatives who will promote the child's reunification or permanent plan. (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1032 [111 Cal.Rptr.2d 243].)

If section 361.3, subdivision (a) is construed to require compliance with the relative placement preference *throughout the entire reunification period regardless of whether a new placement needs to be made,* subdivision (d) would be rendered superfluous and meaningless, a result to be avoided. (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 749 [619 Cal.Rptr.3d 365].)

DCFS's interpretation of section 361.3 is consistent with the legislative history. Although the legislative history speaks generally of strengthening the

---

[1] Statutory references are to the Welfare and Institutions Code.

relative placement preference provisions, a committee report addressing subdivision (d) stated that subdivision (d) applies "not only to the initial placement of the child, but also to any subsequent placements (where the child may be moved from an existing placement for any number of reasons, such as death or incapacity of the current caretaker)." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 270 (1993–1994 Reg. Sess.) as amended June 14, 1993.)

DCFS's interpretation of subdivision (d) of section 361.3 is consistent with the policy of promoting a child's need for continuity and stability, important components of a best interest analysis. "The linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor." (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 862–863 [11 Cal.Rptr.3d 1].) As explained in *In re Lauren R.* (2007) 148 Cal.App.4th 841 at page 855 [56 Cal.Rptr.3d 151]: "The overriding concern of dependency proceedings, however, is not the interest of extended family members but the interest of the child. '[R]egardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child, whose bond with a foster parent may require that placement with a relative be rejected.' [Citation.] Section 361.3 does not create an evidentiary presumption that relative placement is in a child's best interests. [Citation.] The passage of time is a significant factor in a child's life; the longer a successful placement continues, the more important the child's need for continuity and stability becomes in the evaluation of her best interests."

This case does not present the situation where a suitable relative steps forward immediately after the dispositional hearing and is denied a placement assessment as untimely. In such a case, if the agency refuses to conduct an assessment or to change custody, an assessment may be triggered and a change of custody accomplished through the filing of a section 388 petition. (See *In re Victoria C.* (2002) 100 Cal.App.4th 536, 543 [122 Cal.Rptr.2d 696] [petition for modification can be used to challenge all types of orders, including custody and placement orders, so noncustodial father properly brought petition to request removal of child from mother's custody].)

I am also concerned that a contrary interpretation of the statute will result in increased burdens on the child welfare agencies, which will be forced to expend resources on assessments throughout the reunification period, even when the child remains for a substantial period of time in a stable foster care placement.

Here, Joseph's placements were made at the dispositional hearing in July 2006 and again at the dispositional hearing on the section 342 petition in September 2006. Thus, Joseph's relatives had two opportunities to request the relative preference for placement. It was undisputed that no new placement needed to be made for Joseph in April 2007, when he was in a stable foster home. I therefore conclude that section 361.3 did not come into play at the April 2007 hearing.

A petition for a rehearing was denied June 24, 2008, and respondent's petition for review by the Supreme Court was denied September 24, 2008, S165106. Corrigan, J., did not participate therein.