Filed 4/26/16  In re J.J.  CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.J., a Person Coming Under the Juvenile Court Law. | B264746 (Los Angeles County Super. Ct. No. CK78147) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARIE J., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Julie Fox Blackshaw, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel for Plaintiff and Respondent.

_____

In this juvenile dependency appeal, maternal grandmother Marie J. (Marie) challenges the juvenile court's summary denial of her petition under section 388 of the Welfare and Institutions Code,[1] requesting custody of her granddaughter, J.J. (minor, born Oct. 2013). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**Prerelease Investigation Report**

On March 5, 2014, the Los Angeles County Department of Children and Family Services (DCFS) initiated dependency proceedings on behalf of then-four-month-old minor, and placed her with her maternal aunt, Lydia J. (Lydia). On March 10, 2014, a DCFS dependency investigator (DI) went to Marie's house to assess her for placement. Minor was in Marie's care during the visit. Marie was living in a three-bedroom, single-family house that she owned, she was gainfully employed, and she had adopted minor's half brother in 2012 "through DCFS." The report indicated that California Law Enforcement Telecommunications System (CLETS) reports for Marie and her domestic partner, Lisa P. (Lisa), were attached, but they are not part of the record on appeal. The report stated that the CLETS results for Marie and Lisa reflected "extensive criminal history."

Marie told the DI she wanted minor to remain with Lydia because Lydia did not have children and Marie would babysit minor while Lydia worked. Marie continued: "That's where I would truly like the baby to be placed and to continue to stay with my older sister Lydia [J.]. The reason of my decision right now, and I will be completely honest with you, I don't want to deal with my daughter and with her issues." Marie explained that minor's mother, Alexandria J. (mother), needed to be in a treatment center and not with her girlfriend, Daisy V. (Daisy), who was a "major meth addict and criminal." Marie stated that if minor were placed with her, she would be willing to allow mother to visit minor.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The DI interviewed mother, who stated that she did not want minor placed with Marie. Marie had made death threats against mother's girlfriend Daisy and Daisy's mother. When mother was eight months pregnant, Marie "assaulted" mother with an SUV, causing mother to fall to the ground. Mother stated that Marie's partner, Lisa, had a criminal record and a history of drug trafficking. Mother also stated: "Basically, [Marie's] intentions are to have my child taken from me by making false accusations and lying to everyone who will listen, saying that I'm a bad mother, who is always doing drugs and abusing my baby. When I try to get a motel for my child and me, she purposely, tried to cause problems, making false police reports of me abusing and neglecting my child. I have been instructed to file a restraining order with the local police department against my mother."

Mother expressed concern that Marie was babysitting minor. The social worker assigned to the case, Kimberly C. (Kimberly), informed Lydia that minor was not to be alone with Marie, who had not been live scanned.

DCFS recommended that minor not be placed with Marie, because Marie had not expressed a desire for placement and because mother was concerned that Marie would hinder reunification services.

**Addendum Report**

On March 20, 2014, a team decision meeting was held. Marie, Lydia, mother and the maternal great-grandmother were present. Also present was mother's girlfriend Daisy, along with Daisy's mother, Juana A. (Juana). Juana stated that a day or two before DCFS's involvement in the case, Marie appeared at her work and demanded that she come outside. Juana did not know how Marie got her work address and was afraid. Marie called Juana on her work number and said, "'You better come out bitch[,]' and 'give me the baby.'" Juana called the police, but Marie left before they arrived.

DCFS had reviewed Marie's criminal record, which revealed three misdemeanor convictions: a 1988 conviction for driving under the influence, a 1993 conviction for battery, and a 2003 conviction for battery. It appears these convictions

3

ultimately were either set aside or expunged pursuant to Penal Code section 1203.4. Marie also had several arrests for battery, assault, and making terrorist threats.

**Restraining Order**

At the request of DCFS, on April 28, 2014, the juvenile court issued a one-year restraining order against Marie on behalf of social worker Kimberly, following an evidentiary hearing.[2]

The record indicates that Kimberly went to Lydia's house to get minor, because Lydia was leaving her alone with Marie. After Kimberly secured minor in her car, Marie, who had been waiting in her truck in the dark, pulled up alongside Kimberly's car, honked, and attempted to block the car. Kimberly was able to pull away and proceeded to a police station, while Marie followed closely behind, honking as she drove. DCFS acknowledged that Marie had interacted appropriately with seven to eight other social workers.

**Section 388 Petition**

On February 27, 2015, nearly a year after minor was removed from Lydia's care and placed in foster care, Marie filed a section 388 petition, requesting minor be placed with her.

Marie stated: "New evidence is available to show that I can provide a safe and stable home for [minor]. In 2012, I adopted [minor's] older brother . . . through the juvenile court. . . . I have taken great care of [minor] and I have been an active participant in school events. . . . I am licensed by the Bureau of Security and Investigative Services, which means I have passed a live-scan background check. . . . I maintain a safe home, free from any type of substance abuse or domestic violence. . . . I assisted with [minor's] care before she was removed from [Lydia]. . . . If granted custody, I would fully support the parents' reunification efforts and their right to visitation. . . ."

---

[2]     Marie appealed from the restraining order. We issued an order on September 23, 2015, in *In re J.J.*, case No. B257908, dismissing the appeal as abandoned after her attorney filed a "no merit" brief.

4

Marie also stated minor would benefit if placed with her because minor "would be able to maintain and develop close ties with her older brother . . . , her maternal grandmother (myself), and other family members. [Minor] would have a safe and loving home with a relative who has proven that she can meet a young child's physical and emotional needs."

Attached as exhibit B to the petition was a letter from minor's half brother's school stating that Marie was an active participant in school events. Marie also attached her declaration, stating that she was legally married to Lisa, she had assisted with minor's care before her removal from Lydia, and she had visited minor three times since her removal from Lydia in March 2014.

The juvenile court summarily denied the petition, checking the box stating the petition did not state new evidence or a change of circumstance. Marie then filed this appeal.

## DISCUSSION

Marie contends (1) the juvenile court erred in summarily denying her petition because she made a prima facie showing of the requirements of section 388 sufficient to trigger an evidentiary hearing, (2) the court abused its discretion in denying her petition because neither the court nor DCFS assessed her for placement after minor's removal from Lydia, and (3) there were no legal obstacles to her placement request.

### I. Section 388

Section 388, subdivision (a)(1) provides that "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made." Subdivision (d) of section 388 provides that "[i]f it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held."

"The [person] seeking modification must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' [Citations.] There are two

5

parts to the prima facie showing: The [petitioner] must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.] If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing. [Citation.] We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

Marie's petition stated a change of circumstances, namely, that she was requesting minor be placed with her, which she had not done before. Her petition also asserted that she had "new evidence," but she merely recited what was already known—that she had adopted minor's half brother in 2012, she had assisted with minor's care while minor was in the custody of Lydia, she was willing to support reunification services, and she had passed a live scan background check (which presumably would have been necessary to adopt minor's brother). Her declaration added that she was legally married to Lisa and that she had visited minor three times in the prior year.

While Marie was not required to show both a change of circumstances and new evidence, she was required to make a prima face showing that placing minor with her would promote minor's best interests. In this regard, Marie asserted that minor would be able to maintain and develop close ties with her half brother and other relatives and would have a safe and loving home. But the petition ignores that minor had been living in foster care for nearly a year, and Marie did not assert that the foster home was unsafe or that minor was unloved by her foster parent(s). Marie had only visited minor three times in the prior year. By the time of the section 388 petition, minor was still a baby who had no relationship with her half brother. Marie's assertions that minor would be better off with her were merely conclusory. "The petition may not be conclusory." (*In re Anthony W., supra*, 87 Cal.App.4th at p. 250.)

We conclude that Marie did not meet the requirements of section 388.

6

## II. Section 361.3

Marie nevertheless contends the juvenile court erred by denying her petition for modification because under section 361.3 she should have been given preferential treatment for relative placement. In other words, she claims that by summarily denying her petition, the juvenile court failed to meet its statutory obligations under section 361.3.

Section states 361.3, subdivision (a) provides in part: "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." "'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).)

Marie faults DCFS and the juvenile court for not assessing her for placement after minor was removed from Lydia's care. But when minor was removed from Lydia's care in March 2014, nearly a year before Marie filed her section 388 petition, Marie did not make a request for placement at that time. Nor had she requested placement prior to that time. Instead, she made it clear that she preferred minor to be placed with Lydia.

Marie also relies on subdivision (d) of section 361.3, which provides in part that "[s]ubsequent to the hearing conducted pursuant to Section 358 [the dispositional hearing], whenever a new placement of the child must be made, consideration for placement shall again be given as described in this section to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements." But the record does not show that after minor was taken from Lydia and placed in foster care, that a new placement was necessary. Instead, it appears that Marie simply came forward with her placement request by way of her section 388 petition at a time when no new placement was being made.

We recognize that in *In re Joseph T.* (2008) 163 Cal.App.4th 787, 794 (*Joseph*), the reviewing court stated that "at least through the reunification period, when a relative voluntarily comes forward at a time when a new placement is *not* required, the relative is entitled to the preference and the court and the social worker are obligated to evaluate

7

that relative." But the court also stated the well recognized rule that "[t]he relative placement preference, however, is not a relative placement *guarantee*." (*Id*. at p. 798.) The *Joseph* court found the record before it contained ample evidence that the preference was overridden and therefore the juvenile court's failure to state on the record its reasons for denying the relative placement request was harmless error. (*Ibid*.) The same is true here.

As the *Joseph* court noted, "[d]uring the reunification period the first priority is family reunification." (*Joseph, supra,* 163 Cal.App.4th at p. 798.) Marie's petition made no mention of the status of mother's reunification efforts. In this case, the best chance for reunification of mother with minor would not take place if minor was placed with Marie. Mother was adamant that minor not be placed with Marie because mother believed Marie would hinder reunification efforts. The record shows that Marie was hostile towards mother and anyone who supported mother. Indeed, Marie's own action in babysitting minor without DCFS's approval was the cause of minor being removed from the custody of Lydia in the first place. And Marie concedes, as she must, that she acted inappropriately with social worker Kimberly, placing both Kimberly and minor at risk of harm while she drove aggressively behind their car.

## III. Legal Obstacles

Finally, Marie contends there were no legal obstacles to minor being placed with her. In this regard, she largely complains that DCFS provided "only negative information" about her. But the record shows otherwise. DCFS noted, for example, that Marie had adopted minor's half brother, that she was employed and owned a house. Marie also complains about the portrayal of her criminal record. But she concedes that "a criminal records exemption probably would have been necessary" for minor to be placed with her. Marie appears to raise this contention in an effort to show there were conflicts in the evidence that should have been resolved at an evidentiary hearing. But for the reasons discussed above, we find no error in the juvenile court's summary denial of her section 388 petition.

8

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
         ASHMANN-GERST


We concur:


_____, J.
      CHAVEZ


_____, J.
      HOFFSTADT

9