Filed 4/26/21  In re T.D. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re T.D., a Person Coming Under the Juvenile Court Law. | B305686 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HENRY L.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP03253) |

APPEAL from an order of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

Appellant Henry L., the noncustodial presumed father of dependent child T.D., appeals the juvenile court's denial of his request to move T.D. to Arizona under the Interstate Compact on the Placement of Children (ICPC). (Fam. Code, § 7900 et seq.) The court found that T.D. is likely to reunify with his custodial parent, E.D. (Mother), and moving T.D. from California would prevent reunification. Moreover, the record does not show that a relative requested placement of T.D. (Welf. & Inst. Code, § 361.3, subd. (a).)[1] We see no abuse of discretion and affirm.

## FACTS AND PROCEDURAL HISTORY[2]

T.D. was born in 2011. He and his half-siblings K.R. (born in 2014) and P.R. (2015) lived with Mother in California. Appellant resides in Arizona. In March 2019, the Department of Children and Family Services (DCFS) learned that T.D. often missed school and was "scared for his life." T.D. said Mother snorts white powder and smokes marijuana, his family has "a tough life" and lacks a stable home. He worries about Mother's seizures and fears Mother, who hit him with cords, a metal spatula, a toilet paper roll and her hands. (*In re K.R., supra,* B300269.)

In May 2019, DCFS was alerted that T.D. was crying in class, saying "he just wanted to die." He was frightened because Mother is absent from home all night, leaving him to care for

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] This court previously resolved an appeal from the jurisdictional order taken by T.R., father of T.D.'s half-siblings. (*In re K.R. et al.* (Jan. 8, 2021, B300269) [nonpub. opn.].) We recite facts from *In re K.R.* to provide case history. T.R. and Mother are not parties to this appeal.

2

three-year-old P.R.  Mother was arrested for driving under the influence of methamphetamine; P.R. was in the car, within reach of drugs and paraphernalia.  The children were detained upon Mother's arrest.  (*In re K.R., supra,* B300269.)

DCFS recited the family's history with Arizona child protective services, which began when T.D. was a few months old.  Mother left T.D. alone or with strangers while she was working or socializing; she was arrested for leaving T.D. in a hot car while shopping, causing him to lose consciousness; she used marijuana while pregnant with K.R. and P.R.; she engaged in domestic violence; and she left T.D. alone all night with baby K.R.  In 2018, T.R. kicked K.R. in the chest and pushed K.R.'s grandmother, breaking her leg.  The Arizona sex offender registry shows that appellant was convicted of sexual conduct with a minor.  (*In re K.R., supra,* B300269.)

DCFS filed a dependency petition.  On August 22, 2019, the court sustained the petition against appellant, Mother and T.R.  Appellant participated in the hearing by telephone.  The court deemed appellant's and T.R.'s sex offender status to be prima facie evidence of a risk of harm.  Mother's use of methamphetamine and marijuana prevents her from providing regular child care and supervision and places the children at risk of serious harm; she endangered P.R. while driving under the influence, with drugs and paraphernalia near the child; appellant and T.R. are registered sex offenders, placing the children at risk of serious harm and sexual abuse; the family has a history of domestic violence; and Mother sends messages to T.R. threatening to kill him and commit suicide.  The court removed the children from parental custody.  (*In re K.R., supra,*

3

B300269.)[3]  T.D. is in foster care; K.R. and P.R. reside with their paternal relative.

In November 2019, DCFS reported that Mother partly complied with the case plan, which includes a parenting program, counseling and a drug rehabilitation program.  She initially failed to appear for testing, then tested negative for drugs.  In October, she was arrested.  She was homeless, admitted to poor decisionmaking and was accused of harming K.R. during a visit.

In February 2020, DCFS reported that the children were suitably placed and receiving therapy.  T.D. misbehaved at school and fought with students.  Mother blamed DCFS for her woes, saying, "I was doing fine before you guys took my kids."  Her visits were inconsistent.  She was occasionally employed, admitted to gambling away hundreds of dollars and engaged in altercations.  During a visit, Mother took T.D. to a bad neighborhood and interacted with people at a "drug place."  Mother encouraged T.D. to lie to social workers.  DCFS began to supervise visits.

Mother was addressing mental health issues with a therapist so she can reunify with the children.  She is open to the idea of living in a shelter.  DCFS contacted T.R. in Arizona, who promised to try to locate appellant for DCFS.

The children wished to reunite with Mother; however, she lacked a stable residence and had been in jail.  The children's safety would be jeopardized in her care because she (1) lived in a

_____

[3] Henry L. appealed the jurisdiction and disposition orders. At his request, we dismissed his appeal on August 6, 2020.  We note that Henry L. and DCFS cite his parentage of T.D. under a 2006 Arizona judgment of paternity.  T.D. was born in 2011, five years *after* the alleged paternity judgment.

4

hotel room with other individuals, (2) associates with drug users and gangsters, and (3) would be mentally and physically overwhelmed by caring for three children. DCFS began investigating permanent placements for the children. Relatives expressed their inability to take all three children and their concern about Mother's mental state.

At the six-month status review hearing, appellant's counsel accused DCFS of failing to provide reasonable services because appellant "had zero contact with this child." DCFS replied that appellant did not return phone calls, did not request anything at disposition and was not given services. Appellant wanted T.D. to visit him in Arizona. The court said its disposition authorized visits in California and "we're not going to do day visits for father in Arizona." It continued the hearing for the parties to review the DCFS service log.

The log shows that DCFS tried to develop a family tree and sent letters to the children's relatives in June 2019. Mother did "not want to have anything to do with her family" or her children to have contact with them. In September 2019, the fiancée of Mother's brother R.D. said T.D. could live with her, although R.D. has been in a mental hospital for an extended period. In October 2019, Debra J. expressed interest in T.D. if she moves to a bigger home; it is unclear if she is related to T.D. or where she lives. In November 2019, Mother's sister expressed interest in legal guardianship if Mother dies or loses the children. The record does not show that appellant or his relatives contacted DCFS to request custody of T.D. The social worker tried to reach appellant by mail and by leaving multiple phone messages, without success.

5

On February 27, 2020, the court took notice of its file, including the sustained petition, case plans and minute orders. Counsel did not offer additional evidence. Minors' counsel observed that T.R. kept telephonic contact with his children, unlike appellant. Mother asked the court to return the children to her care because she is testing negative for drugs. She objected to moving the children to Arizona.

Appellant's counsel blamed DCFS for making "zero attempts to contact my client," while acknowledging that appellant has always had the same phone number and the social worker had left messages for him. Counsel claimed that if appellant were called to testify, he would state that he has been in contact with T.D. throughout the child's life; further, he "has relatives that [T.D.] could have and should have been placed with this whole time." DCFS replied that appellant knew he had to keep contact, refused to return calls from DCFS, and never sought custody or placement with a relative.

The court found that continued jurisdiction is necessary, returning the children to parental custody would pose a substantial detriment to them, and their current placement is necessary and appropriate. As to appellant, "all [he] had to do was have regular visitation with his child. That's all he was ordered to do." The court rejected the notion that T.D. should travel all day for a three-hour visit, saying, "This is on [appellant]. If he wants visitation [he could] make it happen, but he's done nothing. . . . [Appellant] has known the entire time how to facilitate visitation, but he hasn't taken advantage of that."

Though DCFS did not oppose evaluation of T.D.'s Arizona relatives, the court declined to make an ICPC order because "in all likelihood these children are going to be returned to Mother

6

[and] . . . putting the children in Arizona [is] going to significantly impact Mother's progress." When counsel revealed that appellant's parole terms prevent him from leaving Arizona, the court directed DCFS to facilitate telephone visits.

## DISCUSSION

Appellant challenges the denial of his request to place T.D. with relatives in Arizona. The order is reviewed for an abuse of discretion. We consider the evidence in the light most favorable to the ruling. (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Appellant cites a law giving "preferential consideration . . . to a request by a relative of the child for placement of the child with the relative." (§ 361.3, subd. (a); *In re Isabella G.* (2016) 246 Cal.App.4th 708, 722 [statute triggered when a relative makes a request for placement at detention].) Appellant cites no evidence showing an Arizona relative made a request for placement of T.D. since detention. Nothing indicates that appellant or his relatives visited T.D. in foster care to see how he was faring or to develop a trusting relationship with him.

DCFS wrote a letter to appellant and left him telephone messages. He did not respond or ask the social worker to arrange on-line or telephone visits with T.D. At the review hearing appellant demanded that T.D. spend 12 hours in a car to visit him in Arizona. Appellant's concern for T.D. is tenuous at best.

Mother was the custodial parent. It is unclear if T.D. has ever resided with appellant. If, as appellant speculates, his relatives are willing and able to care for T.D. in Arizona, they would have to facilitate court-ordered visits by Mother in aid of her reunification efforts. (§ 361.3, subd. (a)(7)(E).)

7

None of appellant's relatives appeared to express interest in T.D. or explain how they could facilitate Mother's visits. The court did not abuse its discretion by determining that sending T.D. to Arizona would be an impediment to reunification. (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798 [no error in refusing placement with an aunt at the six-month review hearing: Moving the child to another county would frustrate the goal of family reunification by separating the child from his mother].)

Finally, appellant's argument appears to be moot. At a hearing on August 27, 2020, after appellant brought this appeal (but before he filed an opening brief), the court granted appellant's request. It ordered DCFS to initiate an ICPC to determine if T.D. can live in Arizona.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.

8