Filed 4/15/26  In re A.G. CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH & HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. K.S., Defendant and Appellant. | D087317 (Super. Ct. No. NJ15518B) |

APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed.

Heather Elaine Tesdahl, under appointment by the Court of Appeal, for Defendant and Appellant.

Damon M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Indra N. Bennett, Deputy County Counsel, for Plaintiff and Respondent.

# I.    INTRODUCTION

K.S. (Mother) appeals from the juvenile court's order placing her daughter A.G. (Child) with a relative in Michigan without specifying a minimum number of in-person visits.  Mother argues the placement and visitation order thwarted any possibility of successful reunification and, thus, constituted an abuse of the court's discretion.  We disagree and affirm.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Referral and Petition Under Section 300[1]*

The San Diego County Health and Human Services Agency (the Agency) received a referral for suspected child abuse after Child and Mother tested positive for fentanyl and other dangerous drugs in the hospital when Child was born.  As a result of Mother's drug use, Child suffered withdrawal symptoms requiring methadone treatment in the Neonatal Intensive Care Unit.

The Agency was concerned that Mother used substances for the last 15 years, including during pregnancy with her previous daughter, A.A., resulting in Mother failing to reunify with A.A.  In that case, Mother did not engage in substance abuse treatment, the juvenile court terminated her parental rights, and her cousin, G.M., adopted A.A.  Here, because of Mother's extensive substance abuse history, the Agency worried that Mother would continue using substances and fail to prioritize Child's safety and needs.  Although G.M. wanted to care for Child, Mother did not want Child to live with G.M. but did not have another friend or relative to care for Child.

---

[1]    All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

2

As a result, the Agency filed a petition under section 300, subdivision (b)(1), alleging a substantial risk existed that Child would suffer serious physical harm or illness if she remained in Mother's care. The juvenile court made a true finding on the petition, placed Child in a foster home, and ordered the Agency to provide reunification services to Mother. The court also directed the Agency to evaluate relatives for placement. This included G.M. Since G.M. lived in Michigan, she needed Interstate Compact on the Placement of Children (ICPC)[2] approval for placement of Child with her.

B.    *Mother's Treatment and Visitation*

In the first few months of services, Mother completed a detox program and then started a residential drug treatment program. But she continued to test positive for substances, and the residential program discharged her for having drugs delivered to her. Subsequently, Mother was arrested for drug possession.

Upon Mother's release from custody, she entered a second residential drug treatment program. While in the second program, she consistently tested negative for drugs and visited Child. The visitation supervisor observed that Mother's visits were appropriate.

Mother subsequently filed a section 388 petition, requesting an order for expanded visitation. She also completed her inpatient treatment

_____

[2]    The ICPC is an agreement, entered into by California and other jurisdictions, which governs the "sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption . . . ." (Fam. Code, § 7901, subd. (b).) The ICPC prohibits sending a minor into the receiving state "until the appropriate public authorities in the receiving state notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interest of the child." (*Id.,* subd. (d).)

program.  At the contested section 388 hearing, the juvenile court ordered that Mother have liberal unsupervised visits with Child.

Over the next two months, Mother continued to consistently visit Child. The Agency became concerned, however, that Mother lived with a friend who had both a substance abuse and criminal history.  Mother's communication with the Agency became sporadic, she failed to drug test consistently, and the Agency could not confirm Mother's enrollment in an outpatient substance abuse treatment program.

C.    *Six-Month Review Hearing and Relative Placement*

When G.M.'s home became an approved relative ICPC placement, the Agency recommended placement of Child with G.M. in Michigan, along with sibling A.A.  The parties litigated Child's placement in conjunction with the six-month contested review hearing.

At the contested hearing, Mother testified that she consistently visited Child.  She also testified about some obstacles she faced moving into sober living, drug testing, and communicating with the Agency.  Mother opposed Child's placement in Michigan saying the distance would make it hard to visit and reunify.  The juvenile court ordered continued reunification services and liberal unsupervised visitation for Mother, but the court placed Child with G.M. in Michigan.

III. DISCUSSION

A.    *Relative Placement Order*

On appeal, Mother contends the juvenile court abused its discretion when it placed Child with the maternal relative in Michigan because placing Child out of state was not in Child's best interest and thwarted reunification. We disagree.

4

1.    Applicable Legal Principles

"We review a juvenile court's custody placement orders under the abuse of discretion standard of review; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse." (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.)  We will not interfere unless we find that no judge could reasonably have made the same placement order.  (*Ibid.*)

When a child is removed from the physical custody of his or her parents, relatives must be assessed and considered favorably before other potential caregivers are explored.  (§ 361.3, subd. (c)(1); *In re Stephanie M.* (1994) 7 Cal.4th 295, 320 (*Stephanie M.*).)  Relative preferential consideration applies throughout the reunification period.  (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 790.)

When assessing relatives for placement, the Agency and juvenile court must consider the eight factors outlined in section 361.3, subdivision (a), which include, in pertinent part, "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs.  [¶] (2) The wishes of the parent, the relative, and child, if appropriate.  [¶] (3) The provisions of . . . the Family Code regarding relative placement [including giving full consideration to the proximity of the parents to the placement so as to facilitate visitation and reunification].  [¶]  (4) Placement of siblings and half siblings in the same home . . . ."[3]  Of these factors, the

---

[3]    The remaining factors include, "(5) The good moral character of the relative . . . .  [¶]  (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful.  [¶]  (7) The ability of the relative to do the following:  [¶]  (A) Provide a safe, secure, and stable environment for the child.  [¶]  (B) Exercise proper and effective care

5

best interest of the child is primary. (*In re Maria Q.* (2018) 28 Cal.App.5th 577, 592.)

> 2. Application of Section 361.3 Factors

Here, G.M. requested placement of Child. Since G.M. is Child's maternal second cousin,[4] the juvenile court assessed placement of Child with G.M., applying the relative placement factors described in section 361.3, subdivision (a). As we explain, Mother has not shown the court abused its discretion in applying these factors.

Despite Mother's contention otherwise, the court properly considered Child's best interest, which is the first section 361.3 factor. Specifically, the court noted the factor "cuts both ways." The court observed there is a benefit

---

and control of the child. [¶] (C) Provide a home and the necessities of life for the child. [¶] (D) Protect the child from their parents. [¶] (E) Facilitate court-ordered reunification efforts with the parents. [¶] (F) Facilitate visitation with the child's other relatives. [¶] (G) Facilitate implementation of all elements of the case plan. [¶] (H)(i) Provide legal permanence for the child if reunification fails. [¶] . . . [¶] (I) Arrange for appropriate and safe childcare, as necessary. [¶] (8)(A) The safety of the relative's home." (§ 361.3, subd. (a).)

[4] In a footnote, Mother argues for the first time on appeal and without legal authority that second cousins are too distant to be considered a relative for the purposes of section 361.3. We consider this issue waived or forfeited. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal."]; *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419 (*Holden*) ["An appellant cannot bury a substantive legal argument in a footnote and hope to avoid waiver of that argument."]; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary."].)

to Child of having a relative caregiver and living with a sibling. And, on the other hand, "there's a psychological benefit to being close to parents," to be able to see a parent even if it is only once or twice a week.

Mother also argues the juvenile court did not properly consider the third factor, specifically the proximity of the relative placement to Mother and how that distance may impact visitation and reunification. But the record demonstrates otherwise.

The juvenile court carefully considered whether "it is likely that, despite this distance, reunification is still going to be a priority and possible." The court recognized that the distance was significant and "a challenge", but "that just means we have a lot more work to do . . . of making sure that there's a plan for continued contact with [the parents], and that we arrange for travel to occur to California for [Child]." Further, the court stated the parties may need to think "outside the box" and recognize that as Mother "makes progress in her services" and demonstrates sobriety, the court can order overnight or longer visits in California. These statements indicate that the court determined reunification would still be possible and a priority.

Mother further argues that placing children far away from their parents during reunification is an abuse of discretion under *In re Luke L.* (1996) 44 Cal.App.4th 670 (*Luke L.*). We disagree.

The mother in *Luke L.* suffered from emotional dysfunction and cognitive limitations, which limited her ability to parent her children. (*Luke L., supra*, 44 Cal.App.4th at p. 675.) Based on observations of the mother's visits, the social worker believed the mother could neither consistently meet basic needs of the minors, protect them from strangers, nor put into practice what she was learning in services designed to improve her parenting abilities. (*Id.* at pp. 675–676.) Whether the mother had a

7

reasonable chance to reunify with her children turned on the amount of visitation time she was offered because visitation was her opportunity to practice and demonstrate her ability to apply new parenting skills, protect her children, and meet her children's needs. (*Id.* at pp. 674–676, 678, 681.) Accordingly, the *Luke L.* court concluded that placing the children hundreds of miles away from the mother would lead to such a substantial reduction in visitation time that the mother would no longer have a reasonable opportunity to achieve reunification. (*Id.* at p. 681.)

This case is distinguishable from *Luke L.* because reunification here is not as dependent on visitation. Mother here has shown she is capable of properly parenting and caring for Child during visitation. Mother has consistently visited Child, and the visitation supervisor observed Mother's visits were appropriate, noting Mother played with Child, changed her diaper, fed her, held and kissed her, and talked with her. At the six-month review hearing, the Agency recommended, and the court ordered, unsupervised visitation because Mother showed she was capable of safely parenting Child when she is sober.

While Mother's continued visitation is still important to successful reunification, her success does not turn on the amount of visitation time she has with Child because her challenge is sustained sobriety and problems stemming from her drug use. Indeed, Mother can consistently communicate with the Agency, test negative for drugs, move into a sober living home, and engage in treatment regardless of visitation. Unlike *Luke L.*, Mother here can demonstrate she has eliminated the conditions that required juvenile intervention outside of her visitation with Child. Thus, even if Child's out-of-state placement leads to a substantial reduction in visitation time, Mother will still have a reasonable opportunity to achieve reunification.

After going through the section 361.3 factors, the juvenile court determined that, ultimately, the factors weighed "in favor of placing [Child] in Michigan with her sister in the home of the maternal cousin." We conclude the juvenile court properly applied the correct standard and did not abuse its discretion in ordering placement of Child with G.M. in Michigan.[5]

B.    *Liberal Visitation Order*

Mother argues the juvenile court's visitation order was an abuse of discretion because it delegates the power to the Agency and/or G.M. to determine whether visitation will occur at all. We disagree.

"The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1070.) "In fashioning a visitation order, the court may delegate the responsibility of managing the details of visitation—including time, place, and manner—but not the decision whether visitation will occur." (*In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1135.) "[T]he frequency and length of visits are simply aspects of the time, place and manner of visitation." (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1376.) A juvenile court may specify the frequency and length in a visitation order, but

---

[5]    On appeal, Mother neither addresses all the section 361.3 factors nor clearly sets forth an argument that the factors weighed in favor of denying relative placement with G.M. Thus, we consider that argument waived or forfeited because it is not supported with proper substantive legal analysis. (*Holden, supra*, 43 Cal.App.5th at p. 420 [an argument on appeal may be considered forfeited or waived when it is not supported with proper substantive legal analysis]). Moreover, in reviewing the juvenile court's order, we will not reweigh the evidence, substituting our judgment for that of the trial court. (*Stephanie M., supra*, 7 Cal.4th at p. 319.)

9

"compelling a juvenile court judicial officer to specify such detail in a visitation order creates the risk that the order actually may work to the detriment of the child whom the court must protect, and even to the disadvantage of the parent or guardian who is making progress toward eliminating the conditions which required juvenile court intervention." (*Ibid.*)

Here, the juvenile court ordered, "mother shall have liberal unsupervised visitation" and determined "it's not prudent" for the court to try to craft a more detailed visitation order. By mandating *liberal* visitation, the court exercised its judicial authority in determining that Mother had the right to visitation and ensured at least some visitation would in fact occur. The court emphasized that visitation was subject to its continued supervision and control when it directed the parties to discuss the plan for visitation given the court's placement order, and then, "if it becomes a situation where there are challenges" and there needs to be a more specific visitation order from this court, "we can always come back" on "an ex parte to actually spell out a visitation order."

Thus, we conclude that the court neither improperly delegated its authority nor otherwise abused its discretion in crafting the visitation order.

10

### III.   DISPOSITION

For the reasons stated above, we affirm the juvenile court's placement and visitation order.


                                                            RUBIN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.