Filed 5/16/16  In re R.S. CA5

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.S. et al., a Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RANDY S.,<br><br>Defendant and Appellant. | F072728<br><br>(Stanislaus Super. Ct. Nos. 517190, 517191 & 517192)<br><br>**O P I N I O N** |

### THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Gomes, Acting P.J., Kane, J., and Poochigian, J.

Appellant Randy S. (father) appeals from the juvenile court's order summarily denying his petition filed under Welfare and Institutions Code, section 388[1] seeking placement of his three children with their paternal grandmother. He contends the juvenile court misapplied section 361.3, the relative placement statute, and abused its discretion in denying the petition. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In January 2015, the Stanislaus County Community Services Agency (agency) took then three-year-old Randy, 23-month-old Robert and newborn Megan into protective custody because their parents, father and Jennifer, used methamphetamine and marijuana and endangered them. The agency placed the children together in a foster home.

The juvenile court ordered the children detained at the initial hearing. Relatives immediately expressed interest in the children. Their maternal great grandmother and paternal grandfather were present at the hearing. Their maternal step- grandmother contacted the social worker that same day and expressed interest in having the children placed with her.

In February 2015, the juvenile court conducted a combined jurisdictional and dispositional hearing. By that time, both parents were in residential drug treatment. Father's attorney informed the court that relative placement was an issue. He advised the court that the maternal grandmother was being assessed but had a child welfare history and so was not suitable for placement. He said an aunt and an uncle had come forward separately to take the children. County counsel stated that the parents had provided the names of relatives to assess for placement and the agency sent them letters but none of them expressed an interest in placement. Father's attorney told the court that an uncle had been trying to reach the social worker for some time. The juvenile court advised

---

**1** All statutory references are to the Welfare and Institutions Code.

2

father and Jennifer to encourage the relatives to communicate with the agency and take an active role in placement. The court exercised its dependency jurisdiction over the children, ordered reunification services for both parents and set a six-month review hearing for August 2015.

In its report for the six-month review hearing, the agency recommended the juvenile court terminate father and mother's reunification services. Both parents were discharged from drug treatment in June 2015 for dishonesty and noncompliance. The agency reported that the children had been living with their foster parents since January 2015 and were well-bonded to them. Initially, Randy and Robert were aggressive and destructive and were unable to fall asleep on their own. However, after several months of counseling and with the assistance of the foster parents, they were less anxious and their behavior had improved. The foster parents reported that Robert was a loving child. In the morning, he entered the living room with a smile, said "good morning" and wanted a hug. In addition, the foster parents loved the children and wanted to adopt them.

Father appeared at the six-month review hearing in August 2015 and requested a contested hearing. The court set the hearing for September 17, 2015.

Meanwhile, on August 27, 2015, father filed a section 388 petition, asking the juvenile court to immediately place the children with their paternal grandmother, Stacey, or order the agency to evaluate her home and the home of their paternal uncle. As changed circumstances, father attached a declaration from Stacey stating that all three of the children had lived with her "throughout their lives." During those times, she provided direct care and supervision for them. She said father and Jennifer stayed with her and her husband when they were clean and sober and needed extra support. They moved out for the last time a few months before Megan was born. She said she never received any formal notice from the agency that the children had been removed. Instead, she was informed by her brother who attempted many times to contact someone at the agency but his calls were not returned. She spoke to a social worker who asked if she wanted her

3

grandchildren. She stated she did not want them at that time. She said she did not explain that she and her husband had a strained relationship with father and she did not believe it was safe for them to have the children. The social worker never explained to her that she may not get another opportunity to take the children. Had she known that, she would have taken them immediately. After father entered treatment and became clean and sober, she welcomed him into her home. She attended the six-month review hearing and was told by a social worker that it was "too late" to take custody of the children. She was fingerprinted and completed a relative placement packet, but the agency was refusing to even evaluate her home. She lived in a three-bedroom house with her husband and 22-year-old son. She said her husband had a misdemeanor charge from more than 20 years ago and neither she nor her son had any criminal background. She had one unfounded child welfare allegation from when Randy was a small boy and accidentally ran into a doorknob in their hallway. She took him to the emergency room and recalled being questioned by a social worker. She said she had a very close bond with all of her grandchildren. They knew her and were comfortable in her home. She was absolutely committed to adopting or caring for them through adulthood if father and Jennifer were unable to reunify.

As evidence that the change in order would serve the children's best interests, father referred to Stacey's declaration and cited *In re Joseph T*. (2008) 163 Cal.App.4th 787, stating "[the agency] has failed to meet its mandates, and while these children may be in a concurrent home, the relative placement preference still applies and they should return to a home the older two have lived [in] safely for the majority of their lives."

On September 11, 2015, the juvenile court denied father's section 388 petition. On form JV-183 ("Court Order on Form JV-180"), under the section explaining the grounds for denial, the juvenile court checked the box stating the petition did not state new evidence or a change of circumstances. In a handwritten explanation, the court stated:

4

"The children have been in their current placement for almost eight months-all but 16 days of Megan's entire life. There is no reason to remove the children from a stable placement. Agency shall continue to assess relatives in the event a new placement becomes necessary."

This appeal ensued.

## DISCUSSION

Father contends the juvenile court erred in denying his section 388 petition for two reasons: (1) it mistakenly found that section 361.3, the relative placement statute, does not apply after the dispositional hearing and (2) it erred in finding that removing the children from their foster parents did not serve the children's best interests.

We conclude the juvenile court did not err. In our view, the fact that Stacey was a relative with preferred placement status was not a determinative factor in the court's ruling on father's section 388 petition. In order to prevail on his petition, father was required to show that removing the children from their foster parents to place them with Stacey served the children's best interest. Father failed to meet his burden as we now explain.

"Under section 388, a parent may petition to change or set aside a prior order 'upon grounds of change of circumstance or new evidence.' (§ 388, subd. (a)(1).) The juvenile court shall order a hearing where 'it appears that the best interests of the child … may be promoted … ' by the new order. (§ 388, subd. (d).) Thus, the parent must sufficiently allege both a change in circumstances or new evidence and the promotion of the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157, citations, fn. & italics omitted.)

Whether the juvenile court should modify a previously made order rests within its discretion and its determination may not be disturbed unless there has been a clear abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) In determining whether

5

the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Justice P*. (2004) 123 Cal.App.4th 181, 188-189.)

In his section 388 petition, father asserted in essence through Stacey's declaration that Stacey's relationship with him had improved to the point that she felt safe taking custody of the children. Stacey represented that the children had lived with her throughout their lives and had a very close bond with her and were comfortable in her home. In addition, she believed she was a suitable placement for them as she had a three-bedroom home and had taken steps to qualify for placement by getting fingerprinted and completing a relative placement application.

In denying father's petition, the juvenile court found that father failed to allege new evidence or a change in circumstances and explained there was no reason to remove the children from a stable placement. Father interprets the court's ruling as stemming from a mistaken belief that the relative placement preference no longer applied. He argues, "In sum, it was NOT too late [in this instance] to invoke the relative placement preference, and adhere to the legislative intent to protect the children's family to the extent possible while reunification efforts are underway, and to do so advanced, the children's best interests." There are two problems with father's argument. First, there is no evidence the juvenile court denied the petition, believing that the relative placement preference no longer applied. Further, even if the court believed it no longer applied, the court did not err.

Section 361.3 requires that certain relatives, including grandparents, be given "preferential consideration" for placement whenever a child is removed from parental custody at the dispositional hearing or when a new placement is required (§ 361.3, subds. (a), (c)(2) & (d)).[2] "Preferential consideration" means that the relative seeking placement

---

**2**     Section 361.3, subdivisions (a) and (d) provide in relevant part: "(a) In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the

6

will be the first to be considered and investigated.  (§ 361.3, subd. (c)(1).)  The relative placement preference established by section 361.3 does not constitute "a relative placement *guarantee*."  (*In re Joseph T*. (2008) 163 Cal.App.4th 787, 798, italics original (*Joseph T*.).)  Nor does section 361.3 "create an evidentiary presumption that relative placement is in a child's best interests."  (*In re Lauren R*. (2007) 148 Cal.App.4th 841, 855.)  It " 'merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' "  (*In re Antonio G*. (2007) 159 Cal.App.4th 369, 376.)

There is a split of authority as to whether the relative placement preference applies at times other than the dispositional hearing or when a new placement is required.  One case suggests the relative preference does not apply after the dispositional hearing unless the nonrelative placement fails and a change of placement is required.  (*In re Lauren R*., *supra*, 148 Cal.App.4th at pp. 854-855.)  Another case, which father refers to his petition, disagreed, holding that the relative placement preference applies through the reunification period.  (*Joseph T*., *supra*, 163 Cal.App.4th at pp. 789-790.)  This court has not taken a position on the issue nor are we compelled to do so in this case.

As we stated above, relative placement was not a determinative factor in the juvenile court's ruling on father's petition.  Stacey's status as a grandmother, assuming the placement preference applied, did not confer any evidentiary presumptions or compel the court to grant father's petition.  Father still had to show under the mandate of section 388 it would be in the children's best interests to change their placement and he failed to do so.

---

child for placement of the child with the relative .…[¶] … [¶] (d) Subsequent to the hearing conducted pursuant to Section 358 [the dispositional hearing], whenever a new placement of the child must be made, consideration for placement shall again be given as described in this section to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements."

7

By September 2015, the children had been in their foster placement for at least seven months which, given their young ages, was a significant period of time. In Megan's case, it was virtually her entire life. In that time, the children had bonded to their foster parents and were doing well there. Though Stacey claimed she also was close to the children and had lived with and cared for them, "throughout their lives" she did not specify when and for how long. It also bears noting that Stacey had virtually no contact with the children after they were removed in January 2015. According to the agency's report, she visited them once in May 2015 for an hour.

When, as here, a child has been in foster care over a significant period, "the child's need for continuity and stability assumes an increasingly important role. That need often will dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child." (*In re Angel B*. (2002) 97 Cal.App.4th 454, 464, citations omitted.)

Here, father failed to show that the children's best interests would be served by removing them from the stable environment of their foster home to place them with Stacey. Thus, the juvenile court did not err in denying his section 388 petition.

## DISPOSITION

The order is affirmed.