Filed 8/12/22  In re Garbriella H. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| IN RE GABRIELLA H. et al., Persons Coming Under the Juvenile Court Law. | B313276 (Los Angeles County Super. Ct. No. 20CCJP01554) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CHASTITY B. et al., Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed and conditionally affirmed with directions.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant Chastity B.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant Ramon T.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Chastity B. appeals from juvenile court orders denying two petitions filed under Welfare and Institutions Code section 388[1] by Chastity's mother, Marlene B., requesting a relative placement assessment under section 361.3 and placement of three of Chastity's four children with Marlene. The Los Angeles County Department of Children and Family Services and the court determined it was not appropriate to place the children with Marlene, in part because the juvenile court had previously sustained a section 300 petition alleging Marlene sexually abused Chastity's oldest child. We conclude that the juvenile court did not abuse its discretion in denying Marlene's section 388 petitions and that any error the juvenile court may have committed in not requiring the Department to prepare a formal assessment under section 361.3 or in applying section 388 to Marlene's request for placement was harmless.

Chastity and Ramon T., the father of one of Chastity's children, also appeal from the juvenile court's disposition order

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

concerning Chastity's youngest child and argue the Department did not comply with the inquiry and notice requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.  We agree the Department did not comply with ICWA and related California law by failing to conduct an adequate inquiry into the child's possible Indian ancestry and to provide adequate notice to the relevant tribe.  Therefore, we conditionally affirm the court's disposition order regarding Chastity's youngest child and direct the juvenile court to ensure the Department complies with its duties under ICWA and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Family Has a Prior History with the Department and the Juvenile Court*

Chastity is the mother of four children: Isabella, who is 15 years old, and Gabriella, Gracie, and Hailey, who are all under the age of six (Hailey is two).  Isabella's father is not the father of Chastity's other children and he, like Isabella, is not a party to these proceedings.  Gabriella and Gracie's father is Moises H.; Hailey's father is Ramon.

In 2011 the juvenile court sustained a petition under section 300 filed on behalf of Isabella alleging Chastity and her mother Marlene sexually abused Isabella.  The sustained petition alleged Chastity and Marlene fondled Isabella's vagina, took photographs of it, and posted the photographs online.  The juvenile court terminated jurisdiction with a custody order awarding sole physical custody of Isabella to her father.

In 2016 the juvenile court sustained a petition under section 300 on behalf of Gabriella and Gracie alleging that Chastity and Moises had a history of substance abuse and that Chastity had not completed court-ordered programs in connection with the petition filed on behalf of Isabella. The court removed Gabriella and Gracie from Moises and released them to Chastity. After Chastity and Moises completed various classes and programs and Chastity submitted to weekly drug and alcohol testing, the court returned the children to their parents and terminated jurisdiction.

B.      *The Department Removes Gabriella, Gracie, and Hailey from Chastity and Files a Petition Under Section 300*

In February 2020 Chastity, while 29 weeks pregnant with Hailey, admitted herself to a hospital after vomiting blood. She tested positive for marijuana, cocaine, and methamphetamine; she did not deny recent methamphetamine and marijuana use. Chastity told a case social worker Gabriella and Gracie were living with Marlene because Chastity was homeless. Marlene told the social worker Gabriella and Gracie (then five and three years old) had lived with her for two years. Marlene denied ever abusing Isabella, calling the previous juvenile proceeding a "custody issue," but she admitted she had a criminal history and child welfare history.[2] Chastity went into labor several weeks

---

[2]      In addition to the sustained petition alleging Marlene sexually abused Isabella, Chastity's referral history as a minor showed a substantiated claim of "Caretaker absence/Incapacity" against Marlene in 1999. The record does not provide any details of Marlene's criminal history.

later.  Hailey was born with "complications with [her] breathing and needed treatment."

On March 4, 2020 a case social worker asked permission to enter Marlene's residence, but Marlene denied the social worker access to Gabriella and Gracie.  Marlene told the social worker she could observe the children through a window, and the social worker informed Marlene that such limited access was not sufficient to assess the children's safety.  The social worker returned with a law enforcement officer, but Marlene, though she was home, refused to answer the door.  Marlene later called the social worker and gave her permission to enter the home.  The social worker reported the children were physically healthy and developing age-appropriately.

On March 13, 2020 the juvenile court issued a removal order for Gabriella, Gracie, and Hailey.  Gabriella and Gracie were placed one week later with their paternal grandparents, and Hailey was placed with her father, Ramon.  The Department later detained Hailey from Ramon following his incarceration for a domestic violence incident involving Chastity.

Meanwhile, the Department filed a petition on behalf of Gabriella, Gracie, and Hailey alleging jurisdiction under section 300, subdivisions (b), (d), and (j).  The Department alleged Chastity and Moises failed to make an appropriate plan for the safety and well-being of Gabriella and Gracie by allowing them to live with Marlene.  Under subdivisions (b) and (j) the Department also alleged that Chastity and Moises had a history of substance abuse and that Ramon knew or should have known of Chastity's substance abuse.  The Department filed a first amended petition adding allegations under section 300, subdivisions (a), (b), and (j),

that Chastity and Ramon had a history of domestic violence and that Ramon had a history of substance abuse.

In its July 2020 jurisdiction and disposition report, the Department reported Gabriella was sad, cried often, threw tantrums, and said she should not be living with her grandparents. Gabriella blamed her grandparents for not letting her live with her mother and for why her mother did not call her. The Department reported Gracie had no mental or emotional issues and was adjusting well to her grandparents' home.

C.    *Marlene Files Multiple Section 388 Petitions, and the Juvenile Court Sustains the Section 300 Petition*

Marlene filed several petitions under section 388 challenging the juvenile court's jurisdiction findings in the dependency proceedings involving Isabella and seeking placement of Gabriella, Gracie, and Hailey with her. The juvenile court denied the petitions with the exception of one filed on July 22, 2020, which the court set for a hearing. That petition asked the court to place the children with Marlene and to terminate jurisdiction because Chastity made an appropriate plan for the children by leaving them with Marlene. Marlene argued that the children "displayed sadness" because they missed her and that Chastity wanted the children to live with her, where (according to Marlene) they were thriving. Marlene argued that placing the children with her was in the children's best interest because she loved them and that the court never should have removed Gabriella and Gracie from her home.

In a last minute information the Department reported that on several occasions Marlene went uninvited to the home of the paternal grandparents (with whom, as stated, Gabriella and

6

Gracie were placed). Marlene reportedly threatened to sue the paternal grandparents for taking Gabriella and Gracie from her, and she told the children to tell their attorney they wanted to live with her. The paternal grandparents asked for a restraining order against Marlene to protect themselves, Gabriella, and Gracie. Among other things, the paternal grandparents alleged Marlene stood outside their home for 90 minutes complaining loudly about Gabriella's and Gracie's medical care and threatening to call the Department. The record does not indicate whether a court ever issued a restraining order.

At the February 8, 2021 jurisdiction hearing the juvenile court stated that the jurisdiction findings in the proceedings involving Isabella were "res judicata" and that the court did "not have the power or the authority . . . to overrule or relitigate something that has already been finalized." The court sustained the count under section 300, subdivision (j), alleging Chastity and Moises "failed to make an appropriate plan for the children's safety and well being, in that the mother and father allowed the children to reside with maternal grandmother [Marlene], who sexually abused the children's maternal half-sibling . . . . The mother knew of the maternal grandmother's sexual abuse of the [children's] sibling and failed to protect the [children's] sibling. The children's maternal half sibling . . . is a prior Dependent of the Juvenile Court, due to the child's sexual abuse by the maternal grandmother and the mother's failure to protect. Such an inappropriate plan made by the mother and father endangers the [children's] physical health and safety and places the [children] and the [their] siblings . . . at risk of harm, damage, danger, sexual abuse, and failure to protect." The court struck the same allegation under section 300, subdivisions (b) and (d),

7

and sustained other counts alleged under section 300, subdivisions (a), (b), and (j).

After the court sustained the petition, counsel for Ramon asked the court to assess one of Ramon's relatives as a possible placement for Hailey. The court stated that Chastity wanted Marlene assessed too and that Marlene's multiple petitions asked the court to place the children with her. The court asked the Department to assess Ramon's relative and Marlene for placement under section 361.3.

On March 2, 2021 Marlene filed another petition under section 388 stating that the "judge ordered the [Department] to assess" her for placement, but that a case social worker informed Marlene "the judge did not order a full report" and that the social worker would not be assessing her for placement. Instead, Marlene claimed, the social worker told her "paperwork will be filed for [Resource Family Approval] to assess."[3] In response to the question, "What new order or orders do you want the judge to make now," Marlene stated, "I would like the judge to enforce the

---

[3] "The resource family approval . . . process is the current process for 'approving relatives and nonrelative extended family members as foster care providers, and approving guardians and adoptive families.' [Citation.] A resource family is 'an individual or family that has successfully met both the home environment assessment standards and the permanency assessment criteria' established by statute and the State Department of Social Services [citation] and only then are 'considered eligible to provide foster care for children in out-of-home placement and approved for adoption and guardianship.'" (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 310, fn.3.) The Department describes Resource Family Approval as "'a new family-friendly and child-centered caregiver approval process.'"

8

prior order to assess me for placement or the judge can make her own independent judgment." The juvenile court set a hearing on the section 388 petition to coincide with the disposition hearing on May 27, 2021. The court considered Marlene's July 22, 2020 petition under section 388 on May 27, 2021 as well.

D.     *The Juvenile Court Declares the Children Dependent Children of the Court and Denies Marlene's Section 388 Petitions*

In a last minute information report the Department stated it determined Marlene's home was inappropriate for placement because Marlene had a "hit" on the Child Abuse Central Index, had sustained allegations against her of sexually abusing Isabella, and had been "inappropriate" in her visits with the children by interrogating them about their personal hygiene while they lived with their paternal grandparents. Marlene also reportedly asked the children "how many times their grandfather hits them." The Department did not indicate whether its assessment was based on section 361.3 or the Resource Family Approval procedure. The Department also reported that Gabriella and Gracie had been living in the home of their paternal grandparents for over a year and that the grandparents were meeting the children's needs and had bonded with them. Regarding Hailey, the Department reported she was "placed in the medical placement home" of a nurse who was "well versed" on how to care for children like Hailey with special medical and developmental needs and who had completed training at a children's hospital on how to feed Hailey through a "G-tube."

At disposition, counsel for the Department urged the juvenile court to deny Marlene's section 388 petitions for the

9

same reasons.  Counsel for the Department also stated that Gabriella's and Gracie's placement with their paternal grandparents was going well and that subjecting them to further instability was not in their best interest.  Counsel argued that Hailey had "very significant medical challenges" and that "any caretaker of Hailey will need to be fully trained and involved in her medical care to ensure that she continues to thrive."  Counsel for the children and counsel for Moises also opposed granting Marlene's section 388 petitions.  In support of her petitions, Marlene argued she did not understand why her home was not an appropriate placement because she had "not made any problems during visits or contact with [her] grandchildren at all." Counsel for Chastity stated that, if the court did not release the children to their mother, Chastity wanted the court to place the children with Marlene.

The juvenile court declared the children dependent children of the court and removed them from their parents.  Turning to the section 388 petitions, the court stated the burden was on the moving party to show that there were changed circumstances and that granting the petition was in the children's best interest.  In finding that Marlene's home was not a suitable placement and that Marlene's recent conduct was not "conducive to the best interest of the children," the court cited a variety of factors. These factors included the parties' positions on the section 388 petitions, the prior sustained petition involving Marlene's abuse of Isabella, the sustained finding in the current petition that leaving Gabriella and Gracie with Marlene was an "inappropriate plan," Marlene's initial failure to cooperate with the Department, the "record of competing restraining orders," and "the rest of the information in the record."  In denying Marlene's section 388

10

petitions, the court ruled that there were no changed circumstances and that granting the petitions would not be in the children's best interest.

E. *Ramon's Sister Indicates Hailey May Have Indian Ancestry*

At the March 20, 2020 detention hearing Chastity and Ramon filed a form ICWA-020 stating they had no known Indian ancestry. Moises was not present at the detention hearing, but his parents stated their family had no known Indian ancestry. The juvenile court found at that time it had no reason to know Gabriella, Gracie, or Hailey was an Indian child. In connection with the first amended petition, Moises filed a form ICWA-020 stating he had no known Indian ancestry.

In April 2020 the juvenile court detained Hailey from her father and placed her with a paternal aunt, Vanessa T., before eventually placing her in foster care. Vanessa told a dependency investigator Hailey's paternal great-grandfather "came from the Yaqui tribe, but he was not registered with the tribe." Vanessa did not know the paternal great-grandfather's name or have any additional information about him, but she gave the investigator the name and phone number of the sister of the paternal great-grandfather. Vanessa also gave the investigator the names and birth dates (but not birth years) of Hailey's paternal grandfather (who was deceased) and paternal grandmother, as well as the place where the paternal grandfather died. The investigator called the sister of Hailey's paternal great-grandfather twice and left messages, but the sister did not respond. The record does not indicate the investigator attempted to contact Hailey's paternal grandmother.

11

The dependency investigator sent ICWA-030 notices on behalf of Hailey to the Pascua Yaqui tribe and to the Bureau of Indian Affairs. The notices included the name and address of Hailey's father and the names (but not the (partial) dates or places of birth) of Hailey's paternal grandparents. The notices also included an address in Los Angeles for Hailey's paternal grandmother, but no information about Vanessa or Hailey's paternal great-grandfather's sister. The investigator also contacted the Pascua Yaqui tribe by phone. On August 20, 2020 the Pascua Yaqui tribe notified the Department that Hailey, Chastity, and Ramon were not members of the tribe and did not have any pending applications for membership. Based on the information the Department provided, the Pascua Yaqui tribe concluded Hailey was not eligible for membership in the tribe.

On December 15, 2020 the juvenile court found there was no reason to know Hailey was an Indian child. At the May 27, 2021 disposition hearing the court again found no reason to know Hailey had Indian ancestry.

F.    *Chastity and Ramon Timely Appeal*

Chastity filed timely notices of appeal (which she prepared herself) on June 1, 2021, July 12, 2021, and July 21, 2021. Ramon filed a timely notice of appeal from the court's findings and the February 8, 2021 and May 27, 2021 orders involving Hailey.

## DISCUSSION

A. *The Juvenile Court Did Not Abuse Its Discretion in Denying Marlene's Section 388 Petitions or Request for Placement, and Any Error Was Harmless*

1. *We Have Jurisdiction To Review the Juvenile Court's Rulings on Marlene's Section 388 Petitions*

The Department argues we do not have jurisdiction to review Chastity's arguments regarding the juvenile court's orders denying Marlene's section 388 petitions because Chastity's notices of appeal did not identify the court's orders denying those petitions. But they did. The notice of appeal Chastity filed on June 1, 2021 (concerning only Gabriella and Gracie) stated she was appealing from the May 27, 2021 "Jurisdictional Dispositional findings/orders . . . ." Beneath the question asking her to identify the section of the Welfare and Institutions Code under which the juvenile court made the findings or orders she was appealing from, Chastity, though she did not check the box stating "Other *(specify),*" wrote beside that box (among other things): "Denial of (mgm) 388 filed 9/8/20 & and 3/2/21."

The notice of appeal Chastity filed on July 12, 2021 (concerning all three children) stated she was appealing from findings and orders of the court dated May 27, 2021. Beneath the question asking Chastity to identify the section of the Welfare and Institutions Code under which the juvenile court made the findings or orders she was appealing from, Chastity checked the box (among others) stating "Other appealable orders relating to dependency" and wrote, "5/27/21 . . . failed to place & give

13

preferential consideration to maternal [grandmother]." And the notice of appeal Chastity filed on July 21, 2021 (concerning all three children) stated she was appealing from the "Detention, Jurisdictional [and] Disposition 3/30/20, 2/8/21, 5/27/21 [and] ordering suitable placement." Beneath the question asking her to identify the section of the Welfare and Institutions Code under which the juvenile court made the findings or orders she was appealing from, Chastity checked the box stating "Other appealable orders relating to dependency" and wrote (among other things): "Denied (mgm) 388 on 5/27/21."

That pretty much covered it. "Generally, we must liberally construe a notice of appeal in favor of its sufficiency. [Citation.] A notice of appeal shall be "'liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.'"" (*In re J.F.* (2019) 39 Cal.App.5th 70, 75; see *In re Joshua S.* (2007) 41 Cal.4th 261, 272.) Taken together, Chastity's notices of appeal make clear she intended to appeal from the juvenile court's orders denying section 388 petitions filed by Marlene (the "mgm") on July 22, 2020 and March 2, 2021. The June 1, 2021 notice of appeal specifically identified the ruling on the March 2, 2021 petition, and the July 12, 2021 notice of appeal stated Chastity was appealing from the court's May 27, 2021 findings and orders and identified among the "[o]ther appealable orders relating to dependency" the court's failure to "place [and] give preferential consideration to maternal [grandmother]." Finally, the July 21, 2021 notice of appeal also identified the order denying Marlene's section 388 petitions by stating "Denied mgm 388 on 5/27/21" among the "[o]ther appealable orders relating to dependency." It

14

is abundantly clear that Chastity intended to appeal from the juvenile court's denial of her mother's section 388 petitions and that the Department could not possibly have been prejudiced by Chastity's notices of appeal.

2.     *Applicable Law and Standard of Review*
a.     *Section 388*

Section 388, subdivision (a)(1), provides: "Any parent or other person having an interest in a child who is a dependent of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." A relative of a child who has been removed from his or her parents may file a petition under section 388 requesting a relative placement assessment under section 361.3.[4]

"Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstance and demonstrates modification of the previous order is in the child's best interest. [Citations.] "'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances and (2) that the proposed modification would be in the best interests of the child.'"" (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122; see *In re L.S.* (2014) 230 Cal.App.4th 1183, 1193.) "We generally

---

[4]     But a petition under section 388 is not the only way to make this request. (See *In re Isabella G.* (2016) 246 Cal.App.4th 708, 721-722 [a relative is not required to file a section 388 petition to trigger a relative placement evaluation].)

15

review the denial of a section 388 petition for abuse of discretion." (*Malik T.*, at p. 1123.)

b. *Section 361.3*

"'Section 361.3 gives "preferential consideration" to a relative request for placement, which means "that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).)' [Citation.] The intent of the Legislature is 'that relatives be assessed and considered favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child.'" (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 719; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 320.) "In determining whether placement with a relative is appropriate, 'the county social worker and court shall consider, but shall not be limited to,' consideration of . . . eight listed factors, the first of which is the best interest of the child."[5] (*In re J.Y.* (2022) 76 Cal.App.5th

---

[5] The other factors are the wishes of the parent, the relative, and the child, if appropriate; the provisions of Family Code section 7950 et seq. regarding relative placement; placement of siblings and half siblings in the same home, unless the court finds such a placement is contrary to the safety and well-being of any of the siblings; the good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect; the nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful; the safety of the relative's home; and the ability of the relative to provide a safe, secure, and stable environment for

473, 477-478.)  Indeed, the "linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor."  (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 862-863 (*Alicia B.*); accord, *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1112; see *Stephanie M.*, at p. 321 ["regardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child"]; *In re Maria Q.* (2018) 28 Cal.App.5th 577, 592 ["[t]he first and foremost of [the] factors is '[t]he best interest of the child, including special physical, psychological, educational, medical, or emotional needs'"].)

"[P]referential consideration under section 361.3 'does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.'" (*Alicia B.*, *supra*, 116 Cal.App.4th at p. 863; accord, *In re Antonio G.* (2007) 159 Cal.App.4th 369, 376.)  Where more than one relative requests preferential consideration, the county social worker and the court must consider each relative under the factors enumerated in section 361.3.  (See § 361.3, subd. (b).) "[T]he court is not to presume that a child should be placed with a relative, but is to determine whether such a placement is *appropriate,* taking into account the suitability of the relative's

---

the child, exercise proper and effective care and control of the child, provide a home and the necessities of life, protect the child from his or her parents, facilitate court-ordered reunification efforts, facilitate visitation with the child's other relatives, facilitate implementation of the case plan, and provide legal permanence for the child if reunification fails.  (§ 361.3, subd. (a).)

home and the best interest of the child." (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 321; see *In re H.K.* (2013) 217 Cal.App.4th 1422, 1436.)

"A juvenile court's placement orders are reviewed under the abuse of discretion standard; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse." (*In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1420; see *Alicia B.*, *supra*, 116 Cal.App.4th at p. 863.) "'Broad deference must be shown to the trial judge. The reviewing court should interfere only "'if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he [or she] did.'"'" (*Sabrina H.*, at p. 1421; see *Alicia B.*, at p. 863.)

3.    *The Juvenile Court Did Not Abuse Its Discretion in Denying Marlene's March 2, 2021 Section 388 Petition*

Chastity argues the juvenile court abused its discretion in denying Marlene's March 2, 2021 section 388 petition because that petition merely sought to rectify the court's failure to enforce the court's prior request that the Department conduct a relative placement assessment of Marlene under section 361.3. Chastity asserts Marlene's section 388 petition asked the juvenile court to "'enforce the prior order to assess [her] for placement [*so*] the judge can make her own independent judgment.'" (Italics added, second set of brackets in original.) Chastity's assertion is based on a significant misrepresentation of the record. As stated, the petition actually asked the court to "'enforce the prior order to assess [Marlene] for placement *or* the judge can make her own independent judgment.'" And the judge in fact made an

independent judgment, based on an assessment from the Department and the record as a whole, that Marlene was not an appropriate placement. Thus, Marlene obtained the relief she requested. Chastity's argument that the court abused its discretion because Marlene's section 388 petition sought only to enforce an existing order is, at best, meritless. To the extent Chastity argues the juvenile court, in ruling on Marlene's section 388 petition, abused its discretion by failing "to properly assess [Marlene] as a placement option" under section 361.3, as we will discuss, any error was harmless. (See *In re Isabella G.*, *supra*, 246 Cal.App.4th at pp. 723-724 [harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818 applies to a juvenile court's failure to assess a relative under section 361.3]; *In re Joseph T.* (2008) 163 Cal.App.4th 787, 798 [juvenile court's errors in failing to apply the relative placement preference and to state on the record its reasons for denying a relative's placement request were harmless].)

> 4. *The Juvenile Court Did Not Abuse Its Discretion in Denying Marlene's Request for Placement, and Any Error Was Harmless*

Chastity argues the juvenile court erred in applying the standards of section 388 to Marlene's request for placement. As Chastity acknowledges, however, the court characterized Marlene's section 388 petitions as "asking for an assessment/placement of the children," and the court addressed most, if not all, of the factors under section 361.3.

The juvenile court did not state it was considering the factors listed in section 361.3, but the court's comments and findings indicate the court considered the best interests of the

19

children (§ 361.3, subd. (a)(1)); the wishes of Chastity, Marlene, and the children (§ 361.3, subd. (a)(2)); Marlene's prior history of child abuse and neglect (§ 361.3, subd. (a)(5)); Marlene's ability to provide a safe and secure environment (§ 361.3, subd. (a)(7)(A)); Marlene's ability to facilitate visitation with the children's paternal relatives (§ 361.3, subd. (a)(7)(F)); Marlene's ability to facilitate implementation of all elements of the case plan (§ 361.3, subd. (a)(7)(G)); and the safety of Marlene's home (§§ 361.3, subd. (a)(8)(A), 361.4, subd. (a)(3)). (See, e.g., *In re Maria Q.*, *supra*, 28 Cal.App.5th at pp. 599-600 [any error in considering a request for placement under section 388 instead of section 361.3 was harmless where, "[a]lthough the juvenile court did not formally consider the section 361.3 factors, the juvenile court's remarks indicate it conducted a multifactorial assessment of [the children's] best interests," including many of the factors listed in section 361.3].) With regard to the other factors, Chastity does not argue the Department denied placement of the children with Marlene on the basis of the race, color, or national origin of Marlene or the children (§ 361.3, subd. (a)(3); see Fam. Code, § 7950), and Gabriella and Gracie were already placed together, while Hailey required special medical care (§ 361.3, subd. (a)(4)).

There was some evidence in the record that Marlene cared for Gabriella and Gracie for two years and that at least Gabriella had a strong bond with her. (§ 361.3, subd. (a)(6).) But there was also evidence that Gabriella and Gracie had lived with their paternal grandparents, which was a preferred relative placement, for over one year at the time of the disposition hearing and that the grandparents met the children's needs and were bonded with them. (See *In re Lauren Z.*, *supra*, 158 Cal.App.4th at p. 1112 [despite the relative placement

20

preference, adoption by a child's non-relative foster parents was in the child's best interest because she had bonded with them].) And, as discussed, there were compelling reasons for the juvenile court to deny Marlene's request that the court place the children with her. (See *In re Joseph T.*, *supra*, 163 Cal.App.4th at p. 798 [juvenile court's error in failing to apply relative placement preference was harmless where the record showed "compelling reasons" not to place the child with his aunt regardless of her qualifications as a foster parent]; *In re Alicia B.*, *supra*, 116 Cal.App.4th at p. 864 [juvenile court "properly rejected" placing a child with his grandmother where the grandmother had "a substantiated referral of neglect with another grandchild in her care"].)

Chastity argues the juvenile court's failure to consider every factor listed in section 361.3 was prejudicial because it is reasonably probable the court would have placed the children with Marlene had the court considered Marlene had a "close relationship with Gabriella and Gracie, the sexual abuse findings from 2011 were not necessarily true, and [Marlene]'s behavior was not so disruptive as to disqualify her as a placement option." As discussed, however, the juvenile court, in denying Marlene's request for placement, referred to the entire record, which included information about Marlene's relationship with her granddaughters, as well as Gabriella's initial difficulties in adjusting to living with her paternal grandparents. The court also referred to the 2011 sexual abuse finding against Marlene and the court's basis for the current jurisdiction finding that placement with Marlene was an "inappropriate plan." Chastity argues that Marlene was not a party to the proceedings in 2011 and that she "never had a chance to defend herself." Chastity,

21

however, did not appeal from the jurisdiction findings, including the finding Chastity "failed to make an appropriate plan for the children's safety and well-being" by allowing "the children to reside with [Marlene], who sexually abused . . . Isabella." Finally, the juvenile court found Marlene's behavior was uncooperative and not conducive to placing the children with her, findings Chastity does not challenge. We do not second-guess the court's factual findings or reweigh the evidence. (See *In re S.G.* (2021) 71 Cal.App.5th 654, 672; *R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 780.)

   B.  *The Department Did Not Comply with ICWA and Related California Law*

  "ICWA provides: "'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." [Citation.] This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding.' [Citations.] 'ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family.'" (*In re J.C.* (2022) 77 Cal.App.5th 70, 76-77; see 25 U.S.C. § 1902.)

"""""Federal regulations implementing ICWA . . . require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 77; see 25 C.F.R. § 23.107(a) (2021).) State law "'more broadly imposes on social services agencies and juvenile courts . . . an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child.""'" (*J.C.*, at p. 77.)

Chastity and Ramon argue the juvenile court and the Department failed to comply with ICWA and corresponding California law. Chastity argues the Department did not provide adequate notice to the Pascua Yaqui tribe because the Department failed to include any information about Hailey's paternal aunt (Vanessa) or her paternal great-grandfather's sister in the Notice of Child Custody Proceeding for Indian Child, even though the Department had that information. (See § 224.3; *In re J.C.*, *supra*, 77 Cal.App.5th at p. 78.) Ramon argues the Department failed to conduct an adequate inquiry by failing to ask known family members for the name of Hailey's paternal great-grandfather. (See § 224.2, subd. (b); *J.C.*, at p. 78-79.)

The Department argues it complied with ICWA and related California law because its investigator attempted to contact the sister of Hailey's paternal great-grandfather and the Department included the names of Hailey's paternal grandparents in the Notice of Child Custody Proceeding for Indian Child. The Department argues that information was sufficient for the Pascua Yaqui tribe to conclude Hailey did not qualify for membership in the tribe because the tribe requires a member to be a descendant of a member listed in the original base roll of

23

1980 and have at least one-quarter degree Pascua Yaqui blood, and neither of Hailey's paternal grandparents was enrolled as a member of the tribe.

The Pascua Yaqui tribe, however, concluded Hailey was not eligible for membership based on incomplete information. Regarding Hailey's paternal grandparents, the Department provided only their names, the address of Hailey's paternal grandmother, and the date and place of death of Hailey's paternal grandfather. The Department did not provide the paternal grandparents' birth dates (despite having some of that information) or birth places or any former address for Hailey's paternal grandfather. It appears the Department never contacted Hailey's paternal grandmother despite having her address. Thus, the Department failed to conduct an adequate inquiry into Hailey's Indian ancestry and failed to provide the Pascua Yaqui tribe with sufficient information to determine Hailey's eligibility for membership in the tribe. Therefore, we direct the trial court to ensure the Department attempts to contact Hailey's paternal grandmother and provides complete and proper notice to the Pascua Yaqui tribe, including any information obtained from Hailey's paternal grandmother, as well as the names and available information for Hailey's paternal aunt (Vanessa) and the sister of Hailey's paternal great-grandfather.

## DISPOSITION

The juvenile court's orders denying Marlene's section 388 petitions are affirmed.  The juvenile court's disposition order regarding Hailey is conditionally affirmed.  The juvenile court is directed to ensure the Department complies fully with the inquiry and notice provisions of ICWA and related California law.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.